UNITED STATES v. TYGH VALLEY LAND & LIVE-STOCK CO.

(Circuit Court, D. Oregon.    September 26, 1896.)

1. TRESPASS ON GOVERNMENT LANDS—REMEDY.
    The United States has the same right as a private owner to institute legal proceedings to protect its property from threatened injuries.

2. SAME—IMPLIED LICENSE.
    There is no implied license to use for pasture purposes public land reserved for the preservation of forests, to the destruction or injury of such forests.

Daniel R. Murphy, U. S. Atty., and Charles J. Schnabel, Asst. U. S. Atty.

Franklin P. Mays and H. S. Wilson, for defendant.

BELLINGER, District Judge.    It is contended in support of the demurrer to the complaint that the act of March 3, 1875, "to protect ornamental and other trees on government reservations and on lands purchased by the United States and for other purposes," does not apply to a case like this.    That act makes it an offense against the United States to unlawfully cut or injure trees standing upon reserved or purchased lands of the United States, or to break fences inclosing such lands, or to break or open such fences, and drive cattle, horses, or hogs upon such land, for the purpose of destroying the grass or trees thereon, or to knowingly permit such animals to enter, through any such inclosures, upon the lands of the United States.    The injury threatened in this case is from the pasturing of sheep upon an uninclosed forest reservation.    The act in question, so far as it relates to the pasturage of reserved or purchased lands of the United States, refers only to inclosed lands.    The acts complained of are therefore not criminal, under the laws of the United States.    It does not follow that the government is without civil remedies to protect its property from the threatened injury.    It is held in Cotton v. U. S., 11 How. 229, that the rights of the United States as to its public lands are the same as those of any owner of private property, and that it may therefore maintain trespass against any person trespassing upon such lands, either by cutting and carrying away timber or otherwise.    The following quotation embodies the opinion of the court in its main part:

"Every sovereign state is of necessity a body politic, or artificial person, and, as such, capable of making contracts and holding property, both real and personal.    It is true that, in consequence of the peculiar distribution of the powers of government between the states and the United States, offenses

against the latter, as a sovereign, are those only which are defined by statute, while what are called 'common-law offenses' are the subjects of punishment only by the states and territories within whose jurisdiction they are committed. But the powers of the United States as a sovereign, dealing with offenders against their laws, must not be confounded with their rights as a body politic. It would present a strange anomaly, indeed, if, having the power to make contracts and hold property as other persons, natural or artificial, they were not entitled to the same remedies for their protection. The restraints of the constitution upon their sovereign powers cannot affect their civil rights. Although, as a sovereign, the United States may not be sued, yet, as a corporation or body politic, they may bring suits to enforce their contracts and protect their property in the state courts, or in their own tribunals administering the same laws. As an owner of property in almost every state of the Union, they have the same right to have it protected by the local laws that other persons have. As was said by this court in Dugan v. U. S., 3 Wheat. 181, 'It would be strange to deny them a right which is secured to every citizen of the United States.' In U. S. v. Bank of the Metropolis, 15 Pet. 392, it was decided that when the United States, by their authorized agents, become a party to negotiable paper, they have all the rights and incur all the responsibilities of other persons who are parties to such instruments. In U. S. v. Gear, 3 How. 120, the right of the United States to maintain an action of trespass for taking ore from their lead mines was not questioned."

It is argued that there is an implied license from the United States to pasture these lands, growing out of the custom that has existed from the beginning of the government, by which the public lands have been so used. In Buford v. Houtz, 133 U. S. 320, 10 Sup. Ct. 305, it is held that there is an implied license, growing out of the custom of nearly 100 years, that the public lands of the United States, especially those in which the native grasses are adapted to the growth and fattening of domestic animals, shall be free to the people who seek to use them, where they are left open and uninclosed, and no act of the government forbids their use. But there is a clear distinction between public lands and lands that have been severed from the public domain, and reserved from sale or other disposition, under general laws. Such a reservation severs the land reserved from the mass of the public domain, and appropriates it to a public use. Wilcox v. Jackson, 13 Pet. 498. It is in furtherance of the policy of the government by which the public domain is held for settlement that it shall be free to such use by the people as serves the convenience of settlers on uninclosed portions of it without public detriment. The reservation of the lands in question is an appropriation to a special public use, and is therefore a disposal of them, so far as the public domain is concerned. This appropriation is for the promotion of the public good. It is claimed for the government that the pasturage of these lands with sheep will injuriously affect the forests of the reservation, and thus tend to defeat the object for which the reservation was made. If this is true, there is no reason why the government should not be entitled to such civil remedy to prevent the threatened injury as is available to any other owner of property. As was said in Cotton v. U. S., supra, "It would present a strange anomaly, indeed, if, having the power to make contracts and hold property as other persons, natural or artificial, they [the United States] were not entitled to the same remedies for their protection." The object of the reservation is the preservation of the

forests of the Cascade range of mountains in Oregon, and there is therefore no implication of a license to use the reserved lands to the destruction or injury of these forests. The government, no less than a private party, is entitled to have its interests protected against the threatened trespass and injury. The demurrer to the complaint is overruled.