# ANTHONY WILKINSON LIVE STOCK COMPANY
## v. McILQUAM.

FENCES—INJUNCTION—ADJOINING LANDOWNERS—NUISANCES—PUBLIC LANDS—PASTURAGE—LICENSE—SUIT TO ENJOIN PUBLIC NUISANCE—PARTIES.

1. Where it was sought to restrain a defendant from constructing fences upon its own lands, which, while not entirely enclosing its lands, would prevent the cattle of the plaintiff from going from his land across defendant's lands to reach uninclosed and unappropriated public lands, and returning to plaintiff's land for water, and which fences did not enclose any of such public lands; *held,* that to authorize the interference of equity to restrain such fencing it must appear that it will invade some legal or equitable right of the plaintiff.

2. A landowner has absolute dominion over his own lands, and may make any legitimate use of them he sees fit, and, should injury to adjoining landowners result, it will be *damnum absque injuria.*

3. In determining whether the use of one's property is or is not a nuisance, the motive of the party has no connection with the injury or bearing upon the result.

4. It is immaterial that the purpose of a landowner in building a fence along one side of his premises was to prevent the cattle of an adjoining landowner from having access to his premises in going to and from neighboring uninclosed public lands, or what the motive was, if it was not unlawful to erect such fence, and its erection did not invade or interfere with some right of the adjoining landowner.

5. The privilege or right of pasturage upon the public lands of the United States, which are left open and uninclosed, and are not reserved or set apart for other public uses, is common to all who may wish to enjoy it; it is not a special privilege conferred upon one person or a few persons, and no individual has any greater right than another to herd his live stock upon such lands, or to allow them to roam thereon.

6. Priority of use as to pasturage upon the open, uninclosed and unreserved public lands of the United States does not create a priority of right.

7. By the tacit acquiescence of the government in the use of the open, unreserved and uninclosed public lands for the

pasturage of domestic animals, that which otherwise would
be a technical trespass is rendered lawful; but no title is
thereby acquired by the user to the lands themselves.

8. Generally a license as to realty does not operate to create
a title to the land in the licensee, but merely as an
exemption from liability for acts which would otherwise
be a violation of the rights of the licensor.

9. The right or privilege of pasturage upon open, uninclosed
and unreserved public lands of the United States does not
depend upon the ownership of neighboring lands, nor does
such ownership confer any peculiar or greater privileges
in respect to such right of pasturage.

10. The fact that one has secured title to a tract of land in a
large unsettled territory, which he desires to use in con-
nection with uninclosed public lands of the United States,
does not give him a right to demand that his premises
shall be rendered accessible from the public lands so as to
permit him to control by injunction the erection of fences
otherwise lawful upon intervening lands of a private
owner.

11. The owner of land situated between the land of another and
a body of open, unenclosed and unreserved public lands is
entitled to prevent the incursions of the other's cattle upon
his land by building a fence along one side of his own
land, and it is no ground for enjoining such fence that
such landowner does not thoroughly enclose his land by
a lawful fence.

12. Private persons, seeking the aid of equity to restrain a pub-
lic nuisance, must show some special injury peculiar to
themselves aside from and independent of the gen-
eral injury to the public; and an injury, to be special,
must differ in kind, and not merely in extent or degree,
from that which the general public sustains.

13. So far as a mere unauthorized or illegal assertion of a right
of exclusive possession of open and unenclosed public lands
interferes with the common or public right of pasturage
thereon it is an injury to the public, and, if a nuisance at
all, a public nuisance.

14. One having no other or greater right to public lands
than that of the public to graze and pasture cattle
thereon under an implied license of the government
cannot maintain a suit to enjoin an unauthorized or
illegal assertion by another of a right to the exclusive
possession of such lands, since the injury suffered by him

would not be special or different from that suffered by the public generally, notwithstanding that he owns land in the same vicinity.

[Decided December 16, 1905.]                    (83 Pac. 364.)

Error to the District Court, Laramie County, Hon. Richard H. Scott, Judge.

Action to enjoin the erection of fences upon lands of the defendant, which it was alleged would prevent plaintiff's cattle from grazing upon open and uninclosed public lands; and to restrain an alleged illegal assertion by defendant of a right of exclusive possession to certain public lands. From a judgment in favor of the plaintiff, the defendant brought error. The facts are stated in the opinion.

*John W. Lacey* and *C. W. Burdick,* for plaintiff in error.

The fence of defendant below does not and was not intended to enclose government land. It interfered with the plaintiff only by preventing him from forcing his cattle across defendant's land to the government lands beyond. An injury can only arise from an unauthorized invasion of the rights of another. By guarding its premises from the trespass of plaintiff's cattle, the defendant committed no wrong. It might have stationed men on its land to keep off plaintiff's cattle, and surely it can build a line fence to accomplish the same purpose, without invading any right of the plaintiff. There is no reason for requiring defendant to either entirely enclose its lands by a fence or else build no fence at all. The only right claimed by the plaintiff is to depasture government lands under an implied license common to all stock raisers. He has no other right to such lands. He has not, therefore, any legal or equitable right, but, on the contrary, a mere permissive license arising solely from the silence of the government. It is incumbent upon a party seeking relief by injunction to show some clear legal or equitable right, and a well grounded apprehension of immediate injury to those rights. The plaintiff has not shown any such right as the law requires. He cannot en-

force a public right. (High Inj., Secs. 7, 9, 651, 652-698; Hilliard Inj., 319; McGinnis v. Freidman, 17 Pac., 635; Spelling Ex. Rem., Sec. 364; R. R. Co. v. Spratt, 12 Fla., 26; Gleason v. Jefferson, 78 Ill., 399; Hardesty v. Taft, 23 Md., 512; Bennett v. Am. Art. Union, 5 Sandf., 614; Smith v. Henston, 28 N. E., 358; Treadwell v. Payne, 15 Cal., 496; Mowday v. Moore, 19 Atl., 626; Spangler v. Cleveland, 43 O. St., 526; Delaware, &c., Co. v. Central, &c., Co. (N. J.), 17 Atl., 146; Harper v. McElroy (N. J.), 10 Atl., 879; Laird v. Boyle, 2 Wis., 413; Atty. Gen'l. v. Ins. Co., 3 Johns. Ch., 371; 1 High Inj., Sec. 20.)

*W. R. Stoll,* for defendant in error.

All owners of live stock under the license of the government of the United States have a right for their live stock to graze and pasture at will upon the public domain adapted to such use and which public lands are not enclosed or otherwise withdrawn from such use by the government; and in the enjoyment of such right such owners will be protected by any proper remedy of the courts. (Buford v. Houtz, 133 U. S., 320; Matthews v. Ry. Co., 7 N. D., 81; Garst v. Love, 6 Okla., 46; Ketchum v. Davis, 3 Wyo., 164; Delaney v. Errickson, 11 Neb., 533; Powers v. Kindt, 13 Kan., 74; Caulkins v. Mathews, 5 Kan., 199; R. R. Co. v. Rollins, 5 Kan., 167; Harrison v. Adamson, 76 Ia., 337; Lazarus v. Phelps, 152 U. S., 81; Hecht v. Harrison, 5 Wyo., 279; State v. Johnson, 7 Wyo., 512, and Cosgriff v. Miller, 10 Wyo., 190; U. S. v. Dastervignes, 118 Fed., 199; S. C., 122 Fed., 30; U. S. v. Tigh Vally L. & L. S. Co., 76 Fed., 693.)

It is unlawful for any person to enclose government land to which he has no title or color of title, and it is equally unlawful for any person to seek to appropriate to his own exclusive use any such government land, or to obstruct or prevent full passage or transit over the same by means of fences or otherwise. If any person does enclose such land or seek to appropriate the same to his own use, he may be

proceeded against at law, in equity or criminally, by the
government of the United States. (U. S. St. of Feb. 25,
1885, Ch. 149 (23 St. at Large, 321) ; Buford v. Houtz,
133 U. S., 320; U. S. v. Brighton Ranch Co., 26 Fed., 218;
U. S. v. Brighton Ranch Co., 25 Fed., 465; U. S. v. Bu-
ford (Utah), 30 Pac., 433; U. S. v. Cleveland, &c., Co., 33
Fed., 323; U. S. v. Camfield, 59 Fed., 562; Camfield v.
U. S., 66 Fed., 101; Cameron v. U. S., 148 U. S., 301;
U. S. v. Bisel, 8 Mont., 20; U. S. v. Flaherty, 8 Mont., 31;
Barclay v. U. S., 3 Wash., 522; U. S. v. Cook, 36 Fed.,
896; U. S. v. Felderward, 36 Fed., 490; State v. Good-
night, 70 Tex., 682.)

From the foregoing, we submit, it follows that if by doing
so such person violates the right of any other person to the
proper use of such lands, such other person must necessarily
have his proper remedy in the courts for such violation.

If it is true that the government of the United States has
given the settlers upon the public domain the right to
pasture and graze their live stock thereon, or to make other
use of the public domain, and settlers have availed them-
selves of this license, would the license be of any avail to
them if its invasion could not be prevented or punished or
compensated for in a court of justice? How can the courts
in this country recognize any right whatever in the settlers
in this regard unless they can at the same time enforce such
right? Does not the violation of a right require a remedy?

The defendant in error does not dispute the right of the
plaintiff in error to pasture its cattle or live stock upon the
lands in question, but it does dispute its right to claim the
exclusive possession of those lands for its own cattle to the
exclusion of the cattle of the defendant in error. The whole
question is simply a question of the plaintiff in error appro-
priating to itself a large area of government land to the
exclusion of all use for the purposes of pasturing the live
stock of the defendant in error.

If the plaintiff in error were to erect a fence about the
lands in question, it could not thereby exclude the cattle of

the defendant in error. If he should do so, the defendant in error could come into a court of equity and have his right to pasture the land in question recognized, and a judgment restraining the defendant from interfering with his cattle. Now, if this is so, is it not equally true that the plaintiff in error cannot exclude the cattle of defendant ·in error from the public lands in question by means of fraudulent oil filings? What is the difference whether the defendant builds a fence, drives his cattle off the land, or herds them off, or puts a paper on record, so long as the object in doing so is simply to occupy those lands for itself and for its own cattle to the exclusion of the cattle of the defendant in error? The defendant in error is entitled as of right to have his cattle pasture upon the public domain. There is no question in the case as to the fact that the lands are not oil lands; that they have not been filed upon for any bona fide purpose; that no attempt has been made to develop these lands as mineral lands; that no discovery has ever been made of oil upon them; and that the only object and purpose of the plaintiff in error in putting oil filings upon the lands was a fraudulent and fictitious one, whereby the plaintiff in error claimed that it would have the exclusive right to the pasture upon these lands; and in the same connection with this claim and for the purpose of emphasizing it, it built the fence in question.

POTTER, CHIEF JUSTICE.

The plaintiff below, John J. McIlquam, seeks in this action to enjoin the construction and maintenance of certain fences, which, it is alleged, will exclude plaintiff's cattle from certain alleged unappropriated public lands of the United States, and which the defendant below, the Wilkinson Live Stock Company, is alleged to have constructed or threatened to construct, and also to restrain the defendant from otherwise interfering with the pasturing and grazing of said cattle upon such public lands.

The fences complained of are built or are proposed to be built upon lands owned or leased by the defendant, the

Wilkinson Live Stock Company, in Township 17 North, Range 64 West, in Laramie County. It appears that the plaintiff is the owner of the northwest quarter of section ten (10) in that township and range, and also the following tract in township eighteen: The east half, and the east half of the southwest quarter, of section 34, and the west half of the southwest quarter of section 26; that he makes his home on section 34; that for twelve years he has been engaged in the ranching and cattle business, allowing his cattle, consisting of four hundred to five hundred head, to run at large, pasture and graze upon the unenclosed public and other lands in that vicinity, their range having been chiefly the lands lying south and west of said section ten (10), in township 17, and embraced in four or five adjoining townships.

The defendant is the owner and is in possession of all the odd numbered sections in township 17, and the odd numbered sections in township 18 from 25 to 35, both inclusive, and has leased and is in possession of sections 16 and 36, in township 17, and section 36, in township 18.

Plaintiff's land in township 18 is enclosed by his own fences, and his land in section ten, in township 17, is enclosed together with the southwest quarter of that section, the west half of that section being in one enclosure; two gaps were, however, left by plaintiff in the fence enclosing his land in that section, one in the fence on the west line of the section, near the center of that line, and one near the middle of the fence on the south line, which gaps afforded a means of ingress and egress for cattle.

Defendant had constructed an east and west fence upon its own land, but close to the dividing line between sections 12 and 13, 11 and 14, 10 and 15, and 9 and 16. It had also built a fence on section 3, which enclosed that section, or at least which had that effect in connection with plaintiff's fences enclosing his land in the adjoining sections 10 and 34. Defendant had also enclosed by fence, with the permission of the entryman, the west half of the east half

of section ten; and it was proposing to build a north and south fence along the east side of section nine, near the dividing line between that section and section ten (10), which proposed fence would practically connect with defendant's fence on section 16 on the south, and section three (3) on the north.

The following map or plat shows the situation of the fences constructed and proposed to be constructed by defendant, as well as the various tracts of land owned or controlled as aforesaid by the respective parties. Defendant's lands are designated by the letter D, and the plaintiff's lands by the letter P. The fences of defendant built or in contemplation, which are complained of, are shown by broken lines. The letters A and B in section 10 indicate approximately the location of the gaps in plaintiff's fence enclosing the west half of that section. It will be observed that the fences on sections nine and fifteen will prevent the access of cattle thereon respectively from plaintiff's land in section ten (10).

N

| | | | | | |
|---|---|---|---|---|---|
| 30 D | D 29 | 28 | D 27 | D 26 / P | D 25 |
| D 31 | 32 | D 33 | 34 P | D 35 | D. 36 |
| 6 | D 5 | 4 | D 3 | 2 | D 1 |
| D 7 | 8 | D 9 | P A D B | D 11 | 12 |
| 18 | D 17 | D 16 | D 15 | 14 | D 13 |
| D 19 | 20 | D 21 | 22 | D 23 | 24 |
| 30 | D 29 | 28 | D 27 | 26 | D 25 |
| D 31 | 32 | D 33 | 34 | D 35 | D 36 |

W                                             E

S

The remaining sections shown on the plat are public lands of the United States; but it appears that most of them had been embraced in so-called oil filings, or oil locations, made by various persons, who are alleged to have made them solely for the benefit of defendant; and it is alleged by plaintiff, and the trial court found, that the lands were not oil lands, and that the oil filings or locations were fraudulent and void, and were made at the instigation of defendant for the purpose of preventing plaintiff's cattle from grazing and pasturing upon the lands embraced therein.

The lands lying west and south of defendant's fences, including as we understand the lands in the adjoining townships, are unenclosed; and it was not found by the learned District Court, nor do we find the evidence to disclose, that any fence constructed by defendant enclosed government land, nor that the proposed fence on section nine (9) would have any such effect. Though there is a finding that defendant had declared its purpose to construct fences upon the government land covered by the so-called oil filings, we think it hardly warranted by the evidence; and no such declared purpose seems to be relied upon in this court. Certainly no act of defendant was shown toward the erection of any such fences, nor the enclosing of such lands. The evidence as to any such proposed fencing is too indefinite and uncertain to authorize equitable interference. It appeared, however, that the defendant prior to the commencement of the suit had served plaintiff with a written notice to the effect that defendant was in possession of the lands covered by the so-called oil filings, and requiring the plaintiff to keep his cattle off of those lands.

The trial court made special findings of fact and law, which were excepted to. It was found, among other things, that one of the purposes of the defendant in erecting the fences shown on the plat, and in causing the filing of the oil claims as aforesaid, and to prevent access of plaintiff's cattle over and across the lands of defendant to the government lands lying south and west of the same, and that the fence was erected the better to enable the defendant to exclude such cattle from the government lands; that the oil filings were made for the purpose also of appropriating to defendant's own and exclusive use the government lands covered thereby; and that defendant claimed the right, by virtue thereof, to the exclusive possession of such lands. It was alleged in the petition that defendant had driven plaintiff's cattle off from some of those lands, but that allegation was found not to be sustained; on the contrary, it was found that plaintiff had forcibly cut a fence of defendant and,

through a gap.thus made, had driven his cattle across one
of defendant's sections to and upon a government section.

The court found as a matter of law that both plaintiff
and defendant were licensees with equal right to range
their cattle upon the unappropriated public lands of the
United States; and that so long as defendant fails to fence
its own lands separate and distinct from the government
lands, the latter constitutes a part of the open range, and
that defendant has no right to impede or prevent the use of
the lands for such purposes, except as might result from the
enclosing of its lands separate and apart therefrom to which
it has possessory or legal title, by a lawful fence; and that
its fences shown on the plat would not constitute a lawful
enclosure.    Upon the findings the court entered a final de-
cree perpetually enjoining defendant as follows:

"From building or connecting any fence or fences with
the other fences of the defendant upon the defendant's own
lands in such manner as to exclude the cattle and live stock
of the plaintiff from pasturing, feeding, grazing or roaming
upon sections 2, 4, 6, 8, 12, 14, 18, 20, 22, 24, and the east
half-of the east half of section 10 in township 17 north, of
range 64 west, or other government lands or any portion of
the same, so long as they remain government lands; and the
said defendant is hereby perpetually enjoined from claiming
any right to the above named sections or to section 32 or the
south half of the south half of section 30, in township 18
north, of range 64 west, or any portion of the same by reason
of any oil filings which the defendant may have heretofore
made or caused to be made for the purpose of excluding
the plaintiff's cattle from pasturing, ranging or feeding
upon said sections or any part of the same, or for the pur-
pose of applying any portion of the same to the defendant's
own use to the exclusion of plaintiff's cattle from the same:
nothing herein contained shall be construed as preventing or
restraining the defendant from enclosing its own lands by
a fence, such enclosure not to contain any government land."
From that judgment the defendant brings the cause to this
court on error.

As defendant's section three (3), and the west half of the east half of section ten (10) are separately enclosed, the fences thereon respectively are not affected by the decree. But it seems to be understood that the other fences of defendant shown on the accompanying plat do come within the operation of the decree. At any rate the injunction, so far as it relates to fencing must be sustained, if at all, upon the basis that such fences produce the supposed injurious results intended to be remedied by the decree. And it is here argued that the fences above referred to do or will exclude plaintiff's cattle from the neighboring public lands, and that is no doubt the theory upon which the injunction was finally awarded by the learned District Court.

It is not contended that defendant's fences will enclose such public lands, and in that manner exclude plaintiff's cattle therefrom; indeed it is an established fact in the case that all the lands west and south of defendant's fences are unenclosed and constitute a part of the open range. But the argument is that plaintiff's cattle will be so excluded because the fences in question will cut off plaintiff's land in section ten (10) from all access to such lands, and thus prevent plaintiff's cattle from reaching those lands from his land, and returning thereto.

It appears that a small stream rises near the southeast corner of section nine which empties into Horse Creek north of the lands shown on the plat, after flowing through the west half of section ten (10), sections three (3), thirty-four (34), twenty-seven (27) and twenty-six (26), and that plaintiff's cattle have usually gone to that stream for water, and convenience if not necessity requires that they have access to plaintiff's land in section ten for that purpose; and the gaps in the fence, surrounding plaintiff's land in that section were provided to afford such access. There are no natural watering facilities upon the open and unenclosed lands west and south, except in Horse Creek, on a county road, four or five miles west from plaintiff's premises.

Plaintiff's sole objection, therefore, to defendant's fences is that they will prevent his cattle from going back and forth

between the government lands and his land in section ten which provides their only available or convenient water supply.   The open and unenclosed lands upon which plaintiff's cattle have usually ranged are presumably accessible from every other direction, there being no contrary showing, and it requires no argument, therefore, to show that defendant's fences will not prevent the cattle of plaintiff or those of other persons from pasturing and grazing upon such lands.   Plaintiff however demands not only the right to allow his cattle to roam at large upon those unenclosed lands, but that they be permitted uninterrupted freedom of travel across defendant's lands to his premises in section ten. And the obstruction of such travel forms the gravamen of his complaint in this case.

There is no showing, nor even any contention, that the plaintiff has acquired, in any manner, a right of way for himself or his cattle across or over any of defendant's said lands upon which its fences are or are proposed to be constructed.   The only right which he asserts is that of pasturage upon the public domain.

It is true that his counsel insists that all of defendant's acts taken together contribute to plaintiff's alleged injury, viz: the fencing, and alleged unlawful oil claims, and the alleged unauthorized assertion by defendant of its possession of the lands embraced within the oil claims.   But whatever may have been the effect of the oil filings, and defendant's claims thereunder, the right to erect and maintain the fences cannot be thereby affected.   If the defendant may lawfully construct and maintain the fences in controversy on its own lands, it is not perceived that such right would be lost, or the fences become any the less lawful, because the defendant may perhaps have asserted a greater right than it possessed to the lands covered by the oil claims.   In the first place, therefore, we shall consider what the rights of plaintiff and defendant are respectively concerning the fences, and whether the former may enjoin their construction or maintenance in this action.

The insufficiency of the evidence to show a purpose or threat on the part of defendant to enclose or construct fences upon public lands has been adverted to. But the theory of the decree does not seem to be an actual or threatened unlawful enclosure of public lands by the defendant, nor is the decree confined to the enjoining of such an enclosure; it goes further than that. It was broadly stated as a conclusion of law that "so long as the defendant fails to fence its own lands separate and distinct from the government land the latter constitutes a part of the open range, and defendant has no right to impede or prevent the use of the lands for such purposes, except as might result from the enclosure of its lands separate and apart therefrom, to which it has possessory or legal title by a lawful fence." And the defendant was enjoined "from building or connecting any fence or fences with the other fences of the defendant upon the defendant's own lands in such manner as to exclude the cattle and live stock of the plaintiff from pasturing, feeding, grazing or roaming upon" certain named government sections, unless by such a fence or fences the defendant should enclose its own lands, without including government land. The mere fact that, without enclosing government land, defendant's fences might, in some manner, exclude the cattle of plaintiff therefrom, would apparently bring such fences within the operation of the decree; and, in view of the facts, the significance of the words "in any manner" as employed in the decree is not to be misunderstood. Though the situation of defendant's fences would not interfere with the bringing of cattle upon the government lands from any other direction, or their grazing and pasturing thereon, it would doubtless interfere with cattle going upon such land from plaintiff's premises in section ten (10), and hence they could not be maintained under the decree, unless indeed the defendant should, by a lawful fence, separately enclose its own land.

The effect of the decree, therefore, is to require the defendant to allow its lands which are not entirely and sepa-

rately enclosed to remain a part of the open range, subject to the trespasses of plaintiff's cattle, or at least to refrain from erecting the ordinary barrier to keep out such cattle.

Indeed, counsel for plaintiff in his brief states that the plaintiff had the unquestionable right to turn his cattle loose upon his own land, and let them roam at large upon defendant's sections 9, 15, and 16, and upon all government sections and other sections in the same locality; though he asserts also that the plaintiff's object was not to hold or herd his cattle upon either of sections 9, 15, or 16, but his object and desire was that his cattle might roam over and pasture upon government land. And in that connection he argues that the object of defendant in building the fences in question was not to prevent plaintiff's cattle from passing over or feeding upon its said sections, but to prevent them from going upon the neighboring government sections covered by the oil filings. But, as before observed, it is clear that if that was the object of the defendant, the only effect of its fences would be to prevent the cattle of plaintiff from going upon such government land, from plaintiff's own premises by crossing the lands of defendant.

Cases arising out of the unlawful enclosure of government lands are not applicable to the case at bar, nor do we find any analogy between those cases and the case here under consideration. Defendant has not enclosed government land; and none of its fences will prevent or obstruct free passage or transit over or through the public lands in question, or the right of any person to peaceably enter upon the same, and settle thereon, or enjoy them in any manner authorized by law. To authorize the interference of equity, therefore, to restrain such fencing it must appear that it invades some legal or equitable right of the plaintiff.

Like every other landowner, the defendant has absolute dominion over its own lands, and it may make any legitimate use of them it sees fit, and should injury to adjoining landowners thereby result, it will be *dammum absque injuria.* (1 Cyc., 769; Wood on Nuisances, Secs. 1, 3; 1

Tiffany on Real Prop., Sec. 295; Wiley v. Connelly (Mass.), 60 N. E., 784; Letts v. Kessler, 54 O. St., 73; Western Granite & M. Co. v. Knickerbocker (Cal.), 37 Pac., 192; Ingwerson v. Bailey (Cal.), 50 Pac., 536; Lazarus v. Parmly, 113 Ill. App., 624.)

The erection of fences for the purpose of annoying a neighbor has been the source of frequent litigation; and by the great weight of authority it is held, in the absence of contrary statutory provision, that the erection by a landowner upon his own premises of a high or unsightly fence or other structure which obstructs the light and air, or view, of his neighbor is not unlawful, nor a nuisance *per se,* and that injunction will not lie in such cases, though the motive in building the fences or other structure may have been ma-· licious and solely to annoy the neighbor, provided the act is not otherwise illegal. In Michigan, which is one of the few states, in the absence of statute prohibiting the erection of so-called "spite fences," holding that a fence erected maliciously, and without any other purpose than to shut out light and air from a neighbor's premises, may be enjoined as a nuisance, the rule is confined to fences which serve no useful purpose and are erected solely from a malicious ·motive. But the principle is recognized even in that state that the motives of a party in doing a legal act cannot form the basis upon which to found a remedy. (Allen v. Kinyon, 41 Mich, 282; Kuzniak v. Kozminski, 107 Mich., 444, 61 Am. St., 344.) And the rule is general that in determining whether the use of one's property is or is not a nuisance, the motive of the party has no connection with the injury, or bearing upon the result. (Wood on Nuisances (2nd Ed.), Sec. 6.)

It is immaterial, therefore, what the purpose of the defendant was in the erection of its fences, if it was not unlawful to erect them, and their erection did not invade or interfere with some right of the plaintiff. It was indicated in the argument on behalf of defendant that the object of erecting the fences was to prevent the trespassing of plaintiff's cattle upon defendant's premises, while the court found

that the object was to exclude such cattle from the public lands. It matters not, in our opinion, how much the purpose, if any, to exclude the cattle from going back and forth between the government land and plaintiff's land entered into the construction of the fences, provided it was lawful to build them, and plaintiff was not injured in any of his rights.

The case of Slaughter v. Cullup, 22 Tex. Civ. App., 578, presents some features closely analogous to the one under consideration. There the owner of three sections of land surrounding on the north, east and south a section owned by the plaintiff, was proposing to erect fences along the outside boundary of each of his three sections, which would separate the plaintiff's section from another section owned by him in the same immediate vicinity, upon which there was a supply of water, and would also prevent the plaintiff's cattle upon his land, and upon the range south of said fences from having free access to such water. It was held that injunction would not lie against such fences. The court said: "Appellee had a right to fence his sections, and unless he included some portion of appellant's lands by crossing at the corner—more than the fence rested upon—he had the right to fence it as he proposed." In that case plaintiff's land was protected on the west by a fence of which he was a joint owner; and the defendant was not proposing to build fences entirely around his three sections separately, but only upon one side of each section, which with plaintiff's west fence would bring the latter's section and the defendant's sections within the same enclosure. In the case at bar plaintiff's land is not brought into a common enclosure with land of defendant.

Plaintiff confessedly has no right to require that his cattle be permitted to cross defendant's land adjoining his premises, unless that right flows from the right which he as well as others have by the implied license of the government to allow his cattle to graze and pasture upon the public domain, since that is the only right which he either alleges or relies upon. It is important therefore to inquire into the

nature of that right. It is to be remembered that the plaintiff claims no special privilege in respect to the public lands, not possessed by every other person in the same situation.

The sole right asserted by the plaintiff is the privilege of free pasturage upon the public domain. The Supreme Court of the United States in discussing that privilege, in the case of Buford v. Houtz, 133 U. S., 320, said: "We are of opinion that there is an implied license, growing out of the custom of nearly a hundred years, that the public lands of the United States, especially those in which the native grasses are adapted to the growth and fattening of domestic animals, shall be free to the people who seek to use them where they are left open and uninclosed, and no act of government forbids this use. * * * * The government of the United States, in all its branches, has known of this use, has never forbidden it, nor taken any steps to arrest it." And again: "Everybody used the open unenclosed country, which produced nutritious grasses, as a public common on which their horses, cattle, hogs, and sheep could run and graze."

This privilege or right of pasturage upon the public lands of the government, which are left open and uninclosed, and are not reserved or set apart for other public uses, is common to all who may wish to enjoy it. It is not a special privilege conferred upon one person or a few persons. No individual has any greater right than another to herd his live stock upon such lands, or to allow them to roam at large thereon. The plaintiff and defendant are no more licensees of the government in that respect than any other person who may seek the benefit of the pasturage upon the public lands under consideration in this case. Priority of use as to such pasturage does not create a priority of right. (McGinnis v. Freidman (Idaho), 17 Pac., 635.) By the tacit acquiescence of the government in such use of its public lands that which might otherwise be a technical trespass is rendered lawful. No title to the lands themselves is thereby acquired. Indeed, generally a license as to realty does not

operate to create a title to the land in the licensee, but merely as an exemption from liability for acts which would otherwise be a violation of the rights of the licensor. (18 Ency. L. (2nd Ed.), 1127, 1128.)

The government might withdraw its consent to such use of its lands by the public at any moment. It has done so from time to time as to the public domain in various sections of the country in reserving the same for other public uses and prohibiting the pasturing of live stock thereon, or allowing the same only under certain prescribed regulations. (U. S. v. Tygh Valley L. & L. S. Co., 76 Fed., 693; Camfield v. U. S., 167 U. S., 518.)

Now the right or privilege of pasturage upon open, unenclosed and unreserved public lands does not depend upon the ownership of neighboring lands, nor does such ownership, as we understand, confer any peculiar or greater privileges in respect to such right of pasturage. But the position assumed by the plaintiff seems to be that because he has secured title to a quarter-section in a large unsettled territory, which he desires to use in connection with unenclosed public lands he may so far demand that his premises be rendered accessible from the public lands as to control by injunction the erection of fences otherwise lawful upon intervening lands which have passed into private ownership. We are aware of no principle upon which that position can be maintained.

So long as the private owner permits his land to remain open, no doubt the plaintiff's cattle while running at large might graze thereon without rendering him liable in trespass therefor. But such private owner would clearly be entitled to prevent such incursions of plaintiff's cattle by the building of a fence; and we think there is no rule which, in such case, requires the landowner, if he fence at all, to thoroughly enclose his land by a lawful fence. Failing to so enclose his land he might not be able to recover damages for the trespass of cattle occurring in consequence of such failure, but so far as the mere right to build fences on his

land is concerned, he is not prohibited by any law or rule that we are aware of from building a fence along one, or two, or three sides of his premises, or through the center thereof, or upon any other part of his land, if he so chooses, unless, by so doing he invades some right of another, or violates some public statute.

We perceive no ground for the distinction in this case made by the decree between a fence separately enclosing defendant's land, and a fence upon one side thereof only. We are unable to understand why the defendant may not by a single line of fence upon its own land, protect the same from the entrance thereon of plaintiff's cattle, if such a fence is deemed proper or sufficient to afford such protection; or, indeed, whether it be or be not deemed sufficient for that purpose. Since such a fence would violate no statute, and would in no greater degree prevent the access of plaintiff's cattle thereon than a fence entirely surrounding defendant's land, what right has the plaintiff to complain, who has no right or easement in such land of the defendant?

Upon what principle may he require, in the protection of his supposed right, that the defendant render it all the more impossible for his cattle to cross the defendant's premises by building a fence not alone on one side, but on all sides thereof? If the defendant may prevent the cattle of plaintiff from entering upon or crossing its adjoining lands by surrounding it with a fence, there seems to be no reason why he may not do so, or attempt to do so, by a fence on one side only. If the defendant owes no duty to the plaintiff to leave its land open for the passage of plaintiff' cattle, how can the plaintiff complain if defendant chooses to build the single line of fence rather than to more fully protect its premises by bringing it within a lawful enclosure?

Suppose the plaintiff owned in fee simple title the lands that are now public, upon what principle could he require the defendant to refrain from erecting the fences in question? If the defendant should desire to construct a residence or ranch buildings upon either of sections 9, 15, or

16, and would be satisfied to build a fence on three sides thereof, it would, under the decree, be prohibited from so doing; but solely on the demand of the plaintiff it would be required to erect perhaps a useless fence separately and entirely enclosing the section, not because the plaintiff has acquired, or expects to acquire any interest in or easement on such section, but merely for the reason that he has a right to allow his cattle to graze upon other neighboring sections.

In a case brought by the Government to enjoin the unlawful enclosure of public lands, where fences had been erected upon the defendant's land surrounding with much of his own land, a large number of alternate sections of government land, it was suggested that though the private owner might have separately fenced in the odd-numbered sections which he owned, and the result would be to practically exclude the Government from its sections, that fact did not authorize the making of the enclosure there in question.  (Camfield v. U. S., 167 U. S., 518.)   In such a case some reason for the distinction between separately enclosing one's own sections, and, by a single line of fence surrounding a large body of contiguous land, some of which belongs to the Government, is apparent.   But the situation in the case at bar is altogether different.   Here there is no necessity or reason whatever, as it appears to us, for such a distinction.

Even where the unlawful enclosure of public lands, in violation of the statute, is involved, it was said in the case last above cited, that, "So long as the individual proprietor confines his enclosure to his own land, the Government has no right to complain, since he is entitled to the complete and exclusive enjoyment of it, regardless of any detriment to his neighbor."   And in Potts v. U. S., 114 Fed., 52, it was held by the U. S. Circuit Court of Appeals for the Ninth Circuit that it was error, upon an indictment for unlawfully enclosing public land, to instruct broadly that a fence built by a person upon his own land was unlawful, if in effect it enclosed and shut out the public from any part of the public domain, but that the question to be submitted to the jury

was whether the defendant intended by his fences to prevent or obstruct any person from peaceably entering upon, or establishing a settlement or residence upon, the tract of public land described in the indictment.

In the case at bar no statute appears to have been violated, and the question is not whether the defendant intended to deprive the plaintiff of some right possessed by him, but whether its acts do in fact invade any such right. If no such right is interfered with, the motive or purpose of the defendant is clearly immaterial.

It follows that as the fences of defendant already erected or proposed to be erected, so far as disclosed by the evidence, will not in any unlawful or improper manner exclude plaintiff's cattle from the public lands, or the plaintiff from the enjoyment of a right of pasturage thereon, there is no ground for an injunction as to fencing.

In placing our decision as to the fencing upon the grounds above stated, we do not wish to be understood as holding that the plaintiff's rights are such as would or would not entitle him to maintain a suit to enjoin the actual exclusion by defendant of his cattle from the public domain.

By the decree in this case the defendant is enjoined from claiming any right to the government lands, or any portion thereof, by reason of oil filings previously made or caused to be made by defendant for the purpose of excluding plaintiff's cattle from pasturing or ranging thereon; or for the purpose of applying any portion of the same to defendant's exclusive use. Though notice had been served on plaintiff to keep his cattle off of the lands covered by the oil filings, and that the defendant claimed to be in possession of the same, it appears that they were and are open and unenclosed, and it is not shown that plaintiff was in fact at any time deprived of the use of them for the grazing of his cattle, although the oil filings were recorded early in June, 1902, the notice aforesaid was dated September 2, following, and this suit was not brought until two weeks later. Plaintiff failed to establish his allegation that his cattle had been

driven from any of such lands by the defendant, and hence regardless of any other question it is doubtful whether the plaintiff suffered any injury such as would require or authorize the protection of equity.

Again it may be seriously questioned whether the validity of the oil claims can be properly determined in this action, where the plaintiff asserts no title to or interest in the premises, but a mere license in common with the public to pasture his cattle thereon, while they remain unappropriated public lands; and the persons, in whose names respectively, the various claims were recorded are not parties, and, moreover, where the court is vested with jurisdiction only in exceptional cases to adjudicate upon contested claims to the public lands under the mining laws, other than to settle a mere question of the right to possession, or to protect the one entitled thereto in that right.

But the case in respect to lands embraced within the so-called oil filings can be disposed of upon much broader grounds, and we need express no decided opinion upon the matters above suggested.

If the defendant without right to the possession of the lands aforesaid should drive the cattle of plaintiff away from the same, for such injury to the latter's personal property he might no doubt maintain an appropriate action. But the injury or damage, if any, resulting to the plaintiff from an unauthorized or illegal assertion of the right to the exclusive possession of the public lands on the part of defendant, would be suffered not alone by the plaintiff, but by all alike whose live stock graze in that locality, or who seek to enjoy the pasturage afforded by the grasses upon such public lands. The injury, in other words, would be an injury to the public, and if a nuisance at all, a public nuisance—somewhat like the obstruction of a highway or the interference with public travel thereon. And it is an elementary principle that private persons, seeking the aid of equity to restrain a public nuisance, must show some special injury peculiar to themselves, aside from and independent

of the general injury to the public. (1 High on Inj. (3rd Ed.), Sec. 762; Wood on Nuisances (2nd Ed.), Sec. 645; 21 Ency. L. (2nd Ed.), 709; Kuehn v. City of Milwaukee, 83 Wis., 583; Engs v. Peckham, 11 R. I., 210; Illinois &c. Canal Co. v. St. Louis, 2 Dill., 70; Steamboat Co. v. R. R. Co., 46 S. Car., 327; 57 Am. St., 688; Reyburn v. Sawyer (N. C.), 47 S. E., 761.) And an injury to be special must differ in kind, and not merely in extent and degree, from that which the general public sustains. (Steamboat Co. v. R. R. Co, supra.) "By common injury is meant an injury of the same kind and character, and such as naturally and necessarily arises from a given cause, but not necessarily similar in degree, or equal in amount. If the injury is the same in kind to all, it is a common injury although one may actually be injured or damaged more than another." (Wood on Nuisances, Sec. 669.)

In the case of Kuehn v. City of Milwaukee, supra, an action was brought to enjoin the deposit in Lake Michigan of garbage collected in the City of Milwaukee. The plaintiff was a resident and taxpayer of the city, and had pursued the avocation of a fisherman, occupying as his fishing grounds "A place about twenty or more miles square, situated east of the central part of the shore line of the city;" and the garbage which was dumped into the lake was driven by the wind and waves into and upon plaintiff's nets, greatly damaging the same, and killing the fish caught therein. The court said, in denying the plaintiff's right to maintain the suit, "Any citizen of the state has a lawful right, in common with all other citizens to fish in the waters of Lake Michigan. Because the right is common to the whole public, such waters are a common fishery. Any act which interferes with the enjoyment of that right in any particular locality may be a nuisance; but, if it affects all alike who fish in that locality, it is a public, and not a private, nuisance, and no private individual can maintain an action in equity to enjoin its continuance. This is elementary law, recognized and enforced by all courts."

Plaintiff's ownership of land in the vicinity of these public lands cannot be held to render the injury to him special, or different from that suffered by the public generally, for the reason that such ownership confers upon him no peculiar right to the enjoyment of the public pasturage, nor any greater right, if any, than that possessed by those who own no land to object to the unauthorized assertion of a right to the exclusive possession of such public lands.   Not only is the plaintiff without title to or interest in the lands alleged to be public, but he has not sought to enter or appropriate any of them, nor any part thereof under any of the public land laws.   We think it might be difficult, therefore, upon any recognized principle, for the plaintiff to establish a right in himself to enjoin the alleged acts and threatened acts of the defendant as to those lands.   Treating the lands as unappropriated public lands neither the plaintiff nor the defendant could maintain a suit to restrain the other from allowing his cattle-or live stock to graze thereon.   (Buford v. Houtz, 133 U. S., 320; McGinnis v. Freidman, 17 Pac., 635.)   If it be conceded that an injunction would lie to restrain the driving of one's cattle from public lands, which question need not be decided, that is not the decree in the case at bar, nor would the established facts authorize an injunction forbidding the driving of plaintiff's cattle from the lands in question, since no such driving actual or threatened was shown.   The notice served upon the plaintiff contained a threat merely to prosecute him for damages for any trespasses committed upon the lands by his cattle; and it would seem that, for any possible injury resulting from an overt act on the part of defendant to exclude plaintiff's cattle from the open and unenclosed public lands, his remedy at law would be entirely adequate, it not appearing that the defendant is insolvent.   Certainly, if the lands are in fact public lands subject to pasturage by the public, plaintiff may use them for that purpose as well as defendant or any other person, and he could successfully defend against an action of trespass, should it be brought against him on account of that use.

We are therefore of the opinion that there is no ground for the injunction as awarded in this case, either as to the fencing, or in respect to the lands said to be covered by the oil claims.   The judgment will be reversed, and the cause remanded.                          *Reversed.*

BEARD, J., and CARPENTER, District Judge, concur.

VAN ORSDEL, J., did not sit, having formerly been counsel in the cause, and HON. CHARLES E. CARPENTER, Judge of the Second Judicial District, was called in to sit in his stead.