(OCTOBER TERM, 1933)

## GILLESPIE v. BOARD OF COM'RS OF ALBANY COUNTY

(No. 1806; March 13, 1934; 30 Pac. (2d) 797)

For the appellant there was a brief by *Glenn Parker* of Laramie, *J. C. O'Mahoney* and *Bard Ferrall* of Cheyenne and oral arguments by *Messrs. Farrell* and *W. O. Wilson* of Cheyenne.

4

For the respondent there was a brief by *Corthell, McCollough* and *Corthell* of Laramie, and oral argument by *Mr. M. E. Corthell.*

6

8

KIMBALL, Chief Justice.

This is a proceeding under statutes, now Sections 52-207 to 52-229, R. S. 1931, for the establishment of a public road in Albany County. The respondent, owner of lands crossed by the road, claimed damages—$2.50 per acre for the lands taken, and $10,000 for lands damaged but not taken. The appraisers, acting under section 52-221, allowed the damages as claimed. The

board of county commissioners, acting under section 52-222, approved the allowance of $2.50 per acre for the lands taken; reduced to $500 the allowance for lands damaged but not taken, and made the establishment of the road dependent and conditioned "upon the payment by the petitioners of all that portion of the damages awarded and expenses incurred in excess of $200, and, also, in excess of the sum of $2.50 per acre for the land actually taken." From the decision of the board of county commissioners respondent appealed to the district court. In the district court the only issue was the dispute as to the amount of the damage to lands not taken. This issue was submitted to a jury which returned a verdict allowing respondent $3500. A few days later, on June 27, 1932, the court ordered that the "verdict of the jury be allowed and approved; and that the clerk of the dictrict court shall certify to (sic) the amount thus ascertained to the county clerk of Albany County, Wyoming, who shall proceed with reference thereto in the manner provided by law." The board of county commissioners appeals and shall hereinafter be called appellant. The notice of appeal states that the appeal is from the verdict and from the order of June 27.

The respondent takes the position that no appeal lies to the supreme court from the district court, and has filed a motion to dismiss. The statute (sec. 52-229) provides that on appeal from the county commissioners to the district court,

"The amount of damages to which the claimant shall be entitled on such appeal shall be ascertained in the same manner as in a civil action, and the amount so ascertained, if any, shall be entered of record, but no judgment shall be entered therefor. The amount thus ascertained shall be certified by the clerk of the court to the county clerk who shall thereafter proceed as if

such amount had been allowed by the board of the county commissioners to the claimant as damages. * * "

In this statute there is no provision for appeal from the district court, but that is unimportant. Appeals from the district court both in ordinary civil actions and in special proceedings are authorized by statutes of general application.

The code of civil procedure provides for review by petition in error (§ 89-4805), and by later statute any judgment or order removable to the supreme court by proceedings in error may be reviewed by direct appeal. § 89-4901. A judgment is the final determination of the rights of the parties in action, and an order is a direction of a court or judge, made or entered of writing, and not included in a judgment. § 89-2201. A final order is "an order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment, and an order affecting a substantial right, made in a special proceeding, or upon a summary application in an action, after judgment." Sec. 89-4801. R. S. 1931.

This is a special proceeding. The ascertainment of damages in the district court affects a substantial right. We think an appeal from that court to this should be allowed unless some provision in the highway law shows the legislative intention to deny the right and thereby exclude the case from the general provisions of the code authorizing appeals from all orders of the district court affecting substantial rights in special proceedings.

The statute (§ 52-229, *supra*) in prescribing the procedure in the district court expressly provides that "no judgment shall be entered" for the ascertained damages, and says nothing about the entry of an order approving the verdict. Respondent claims that the

order of June 27 approving the verdict was unnecessary and unauthorized, and, therefore, there is no valid order from which an appeal can be taken. We cannot accept this view. While the statute does not expressly authorize an order approving the verdict, it does provide for the ascertainment of the amount of damages "as in a civil action," except that "no judgment shall be entered therefor." The reason for the exception is plain. When in the ordinary civil action damages are ascertained, there follows a judgment for the recovery thereof. But this is not necessarily so in a condemnation proceeding. The ascertainment of damages in the district court is in the nature of an award or a correction of the award of the county commissioners, and no personal judgment for the ascertained amount can be rendered. See Railroad Co. v. Wilder, 17 Kan. 240, 247; Todd v. Railway Co., 134 Kan. 459, 7 P. (2d) 79; City of Bloomington v. Miller, 84 Ill. 621; McCall v. Marion County, 43 Ore. 536, 73 Pac. 1030, 75 Pac. 140. While the amount to be paid as just compensation is as fully and formally determined as by an ordinary judgment (Cook v. South Park Com'rs., 61 Ill. 115, 125), the decision should be evidenced by a record entry not inconsistent with the right of the public authorities to abandon the purpose of taking the property. See Lewis, Eminent Domain (3d ed.) § 955. In other respects the damages should be ascertained "as in a civil action." If the trial be before the judge without a jury the damages will be ascertained by an order which will fall within the statutory definition of an appealable order in a special proceeding. We could not approve a a rule that would recognize the necessity of an appealable order in cases tried to the judge, and hold that such an order is not authorized in cases tried to a jury. When there is a jury trial the verdict, as in civil actions, should be approved by court order that

becomes the final order in the case. It follows that the order of June 27 is an authorized and appealable order.

Authorities on this precise question are not numerous. From cases cited above it will be seen that appeals to the supreme court are entertained without question in several states where it is held that in the trial court no judgment can be entered for the recovery of the ascertained damages. In Iowa a statute provides that on appeal to the district court in certain railroad condemnation cases no judgment shall be rendered except for costs. Iowa Code, 1897, § 2011. The contention that the supreme court had no jurisdiction of an appeal because no judgment was entered upon the verdict was answered thus: "It (the district court) failed to enter judgment on the verdict only because a judgment is not contemplated by the statute. The right is always open to the defendant railway company, even after verdict, to abandon the condemnation proceedings. In such case it is liable for costs, and no judgment for more is permissible. The court below did enter its final order in the case. It had no further function to perform. The defendant was entitled to appeal." Klopp v. Railway Co., 142 Ia. 474, 482, 119 N. W. 373, 377. See: Phillips v. Pease, 39 Calif. 582; King v. Board of Education, 116 Minn. 433, 133 N. W. 1018. The motion to dismiss will be denied.

The proposed road is about nine and two-thirds miles in length following the line of an old road traveled for many years but not legally established. One end is at a point on the Lincoln highway in the northeast quarter of section 34, township 20, range 75. From that point it runs in a general northeasterly direction to a bridge on the Laramie River in section 27, township 21, range 74. The part (about three and one-third miles) in township 21 is across lands belonging to the Swan Company, and need not be noticed further. The

part that requires attention is the six and one-third miles in township 20, ranges 75 and 74 where respondent's lands are located. That part, beginning at the Lincoln highway in section 34, township 20, range 75, runs northeasterly over the following lands: For one-fourth mile on section 34 which belongs to the Union Pacific Railroad Company, for one-third mile across the southeast corner of section 27 which belongs to the respondent; for one and one-fourth miles diagonally across section 26 which belongs to the United States; for one-third mile across the southeast corner of section 23 which belongs to respondent; for one mile diagonally across section 24 which belongs to the United States; for one and one-tenth miles across section 13 which belongs to respondent; for less than 100 feet across the southeast corner of section 12 which belongs to A. S. Gillespie; for one and one-tenth miles across section 7 (range 74) which belongs to respondent, and for one mile across section 6 (range 74) which belongs to the United States. The total length across lands of respondent is a little less than three miles, and across lands of the United States a little more than three miles.

The respondent owns about 20,000 acres of land in township 20, ranges 74 and 75, used as a cattle ranch. Before 1929 she owned 12,000 acres along or near the Laramie River in township 20, range 74. These 12,000 acres are east of the proposed road and include all the cultivated land and the ranch buildings. The other 8,000 acres are grazing lands bought by respondent in 1929 for $2.25 an acre, and known as the Crescent lands. They are sections 5 and 7 and some other lands in township 20, range 74, and all the odd-numbered sections in the east half of township 20, range 75. About 5,000 acres of the Crescent lands are west of the proposed road, and the separation of those lands

from respondent's other lands is the principal ground of respondent's claim for damages to her ranch property.

A short time after respondent had bought the Crescent lands, four contiguous sections of government lands were reserved for public use under a provision of the Stockraising Homestead Act (39 Stat. at L. 865, 43 USCA., § 300). Section 24, township 20, range 75, which contains a body of water, was reserved to be kept and held open for use by the public for watering purposes, and sections 14 and 26 in the same township and range, and section 6 in township 20, range 74, were designated as stock driveway sections. Section 6 is bounded on three sides and each of the other three reserved sections is bounded on four sides by lands now owned by respondent. As already stated, more than three miles of the road is across sections 26, 24 and 6. A corner of section 24 touches a corner of section 14. In making further reference to these reserved sections of United States lands they will sometimes be called the stock driveway or the stock driveway sections. The parties agree that the road where it crosses the stock driveway cannot be fenced.

Respondent's claim in more detail is substantially as follows: When she completes a fence which at the time of trial she was starting to build along the west and north boundary lines of the recently acquired Crescent lands, all her ranch will be protected from trespassing livestock, and her own cattle may range freely over all her grazing lands. She contends that her lands that lie west of the proposed road contain no dependable water. If the road is established, she claims it will have to be fenced to protect her from trespasses. The road across the stock driveway sections cannot be fenced, and respondent therefore claims that it will be necessary to fence around those sections in order to

prevent trespasses by livestock that would come there by means of the road. Damages to the ranch were estimated by respondent's witnesses on the theory that the fences along the road connecting with the fences around the stock driveway sections would constitute a barrier that would virtually deprive respondent of the use of lands west of the road, with the result that the number of cattle that could be handled on the ranch would be materially decreased.

A great many of the assignments of error refer to the overruling of objections to evidence offered by respondent. The assignments need not be treated separately, but will be grouped.

Mr. A. S. Gillespie, respondent's son, manager of her ranch, and an important witness, was permitted to tell how the ranch was built up and operated from the beginning, when it consisted of only 320 acres, to the time of trial. By his testimony, it was shown that until 1929 respondent grazed her cattle for a large part of each year on open public lands west and north of the ranch, but in 1929 conditions affecting the use of the open public lands had become so unfavorable that she was forced to buy the 8000 acres of Crescent lands with the intention of fencing them as above stated. This testimony was admitted over objection by appellant who contends that while the testimony had no bearing on the question of the amount of damage caused by the road, it put before the jury alleged injuries to respondent that would naturally prejudice the jury in her favor. Respondent says the evidence was admissible for two purposes; first, to prove that the witness was qualified to testify to the value of the ranch, and, second, to show that the land west of the proposed road had a peculiar value to the ranch as a whole. No doubt, some of the testimony was admissible for those purposes, and objections thereto were prop-

erly overruled. Some that might have been excluded as irrelevant was probably harmless. Some, however, was neither relevant nor harmless.

The Swan Company, already mentioned as the owner of lands near the north end of the road, was interested in the establishment of the road and will be its chief user. Mr. Gillespie was permitted to give testimony evidently offered and relied on for the purpose of showing that the respondent was forced to buy the Crescent lands by encroachments of other livestock owners, principally the Swan Company, which ranged its sheep over lands previously grazed by respondent's cattle. The declared purpose of this evidence is clearly shown by the record. In the argument of an objection, respondent's counsel stated: "We think it is competent to show the necessity of acquiring this (the Crescent) land," and when opposing counsel suggested that that was not one of the issues, respondent's counsel replied, "Yes, it is one of the issues. It is a very big issue in the case, the fact that she was driven off the range and had to buy the land to run her cattle on." The witness was then permitted, over objection, to explain why the running of her cattle on the open range was abandoned. It was shown that the range became overstocked principally with sheep. The Swan Company was the owner of sheep and "was going to get more good out of the feed." When another objection was being considered, counsel for respondent stated that it had been shown that the Swan Company used its lands and adjoining public lands "to the extent that they ran off the cattle of Mrs. Gillespie and she was forced on to these other lands and forced to buy these other lands." The witness was then permitted to tell how the sheep of the Swan Company had grazed lands previously used by respondent. It is shown that in argument to the jury counsel for respondent again

referred to the conduct of the Swan Company which included "driving her (respondent) off the government land where her cattle had grazed in prior years."

That respondent was forced to buy the Crescent lands was immaterial on the issue being tried. It was conceded that she owned all lands she claimed and that they were used in a single ranch enterprise. The sole question was the amount of damage that would be caused to the ranch as a whole by the establishment of the road. Evidence tending to show that respondent had been forced to buy a part of the lands by the conduct of those interested in the establishment of the road, and the reiteration of that claim throughout the trial, was of no assistance in determining the damage caused by the road, and had a natural tendency to create prejudice in the minds of the jury.

Estimates of value of the ranch without the road, as given by respondent's witnesses, were apparently based on the assumption that respondent had the right to enjoy the interrupted use of the stock driveway sections for grazing purposes and as a passageway for her cattle in going to and from sections of her lands that are separated by the stock driveway. It was shown that when respondent completes the fence along the west and north boundaries of the Crescent lands, her grazing lands will be enclosed with the stock driveway sections, and there will then be no way for outside livestock to get to the stock driveway and no interference with her use of the enclosed lands. Damages were estimated by respondent's witnesses on the theory that the road would cause a material change in these conditions. Fences that will have to be built along the road and around the stock driveway sections to prevent trespasses by livestock of others will also prevent respondent's cattle from crossing the road and the

stock driveway in going to and from watering places east of the road.

These estimates are based on the wrong theory. We can find no authority for holding that respondent should be compensated for inconvenience caused by the existence and public use of the stock driveway established by the government wholly on public lands extending for three miles through the ranch along the line of the road. We put aside as immaterial respondent's suggestion that it is to be inferred that the driveway was established on the application of those interested in the road in furtherance of a general scheme to obtain a passageway through the ranch. When she bought the Crescent lands and before the stock driveway was established, the four sections that compose the driveway were there as public lands which partially separated the lands bought by respondent. Her cattle were permitted to cross the public lands by virtue of the government's implied consent which gave her no exclusive right and could be withdrawn at any moment. Anthony Wilkinson Livestock Co. v. McIlquam, 14 Wyo. 209, 83 Pac. 364, 3 L. R. A. (N. S.) 733. Neither ownership of adjoining lands nor exterior fences enclosing the public lands with hers could make her right to use the public lands exclusive or permanent. Anthony Wilkinson Livestock Co. v. McIlquam, *supra;* Hardman v. King, 14 Wyo. 503, 85 Pac. 382; Martin v. Platte Valley Sheep Co., 12 Wyo. 432, 76 Pac. 571, 78 Pac. 1093. She took the chance of having the value of her lands diminished by legitimate uses which the government might make or authorize of the surrounding public lands. Lewis, Em. Dom. (3d ed.) § 366. Her damages should not be increased on account of the loss of the gratuitous privilege of using the stock driveway sections as a passageway for her livestock in going to and from sections of land owned

by her. See: Hatch v. Cincinnati etc. R. Co., 18 Oh. St. 92, 122; Ranlet v. Concord R. Co., 62 N. H. 561; Gorgas v. Philadelphia etc. R. Co., 144 Pa. St. 1, 22 Atl. 715; Sutherland on Damages (4th ed.) § 1071, p. 4021; Lewis, Em. Dom. (3d ed.) § 721. The privilege might be lost as the result of any one of many uses the government might make of its lands.

Livestock that may come by means of the road to the stock driveway will have a right to be there, and it cannot be said that the road is the proximate cause of fences necessary to protect respondent's adjoining lands from trespasses by such livestock. It follows that the cost of fencing around the stock driveway sections was not a proper element for consideration in estimating respondent's damages.

Respondent was not entitled to have the jury consider estimates of damages based on the theory that, without the road, she will not be embarrassed by public use of the stock driveway, and that a barrier six miles in length separating her lands will be caused by the road running for less than 3 miles over her lands and for more than that distance over interspersed public lands that have been set apart as a stock driveway.

Respondent's witnesses were permitted to state that the establishment of the road would cause a substantial reduction in the number of cattle that could be carried on the ranch, and to give estimates of the number that could be carried with and without the road. These estimates were misleading for reasons given above in our discussion of respondent's general theory of damages. Appellant contends that the testimony should have been excluded on the further ground that it tended to show an injury to a business. The rule that injury to a business conducted on the land is not an element of just compensation was referred to in Morrison v. Cottonwood Development Co., 38

Wyo. 190, 206 Pac. 117, where we said that the owner of the land is in some degree protected in respect to damage to his business, as the market value of his lands is frequently more or less interwoven with its value for use in his business. Respondent did not undertake to prove loss of profits in the cattle business, nor did she claim damages based on loss of profits. The judge instructed the jury that they were "not allowed to give any damage on account of loss of business." The jury were considering the market value of respondent's lands as a cattle ranch. There was no claim that the lands were adapted to any other purpose. All the capabilities of the property for that purpose were to be considered. Edwards v. City of Cheyenne, 19 Wyo. 110, 153, 114 Pac. 677, 122 Pac. 900. There can be no doubt that a prudent purchaser of such a property would be influenced by the number of cattle that could be cared for on the ranch. If, by evidence based on a proper theory, it can be shown that the road will cause a decrease in the number and thus interfere with the use of the ranch for the purpose to which it is adapted and devoted (Lewis, Em. Dom. § 727, p. 1273), the evidence will not be objectionable as tending to permit an allowance for injury to a business.

Respondent was permitted to prove that, if the road is not fenced, sheep being trailed along the road will spread over respondent's lands, and cause damage. We do not see that this evidence was of any great importance. We think it was admissible on the question of the necessity of fences along the road. Our views on the question of fences around the stock driveway are stated above. The jury were correctly instructed that the measure of damage, if any, was the difference between the market value of the ranch immediately prior to the establishment of the road and the value thereof immediately after such establishment. They were told that—

"In determining what this difference may be, you may take into consideration all of the elements which you find to exist from the evidence in the case and which go into fixing the market value, including any burden that may be cast upon the land on account of necessary fencing of the land of the appellant traversed by the road, but in this connection you are instructed that before you should consider any such element of necessary fencing, you must find from the evidence that such fencing is the necessary result of the establishment of the road. In considering the different elements which you find to exist under the evidence as establishing damage to appellant you are to consider them only for the purpose of fixing the market value of the land, and are not to allow any special damage for such different elements, including necessary fencing."

The instruction appears to contain a correct general statement of the law in regard to necessary fencing as an element for consideration in determining the effect of the road on the market value of lands through which it runs. See: Lewis on Em. Dom. (3d ed.) § 741; note, 10 A. L. R. 451. In view, however, of the somewhat peculiar conditions and of the evidence before the jury in regard to fencing around the stock driveway sections, something more should have been said to make it clear that the road was not the cause of fences that respondent claimed she would have to construct around lands belonging to the government.

We do not think the evidence of probable trespasses by sheep being trailed along the road would lead the jury to allow damages for trespass, but they might properly have been instructed that the evidence was received for consideration on the question of necessary fencing, and not as the basis for allowing damages for future trespasses.

The order appealed from will be reversed, and the case remanded for a new trial.

BLUME and RINER, JJ., concur.