E. M. STRINGER and E. G. Markley, in the Matter of Their Claim for Damages Sustained by Reason of Establishment of a Highway, Known as Project No. F–54(3), Big Horn County, Wyoming, Appellants (Petitioners below),

v.

BOARD OF COUNTY COMMISSIONERS OF BIG HORN COUNTY, Wyoming, Appellee (Respondent below).

No. 2879.

Supreme Court of Wyoming.

Dec. 8, 1959.

Walter B. Phelan, Cheyenne, for appellants.

John O. Callahan, County and Prosecuting Atty., Big Horn County, Basin, and Robert L. Duncan, Sp. Asst. Atty. Gen., for appellee.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Justice PARKER delivered the opinion of the court.

In State ex rel. State Highway Commission v. Stringer, 77 Wyo. 198, 310 P.2d 730, 734, we held that Stringer and Markley, who had certain oil rights in property taken by eminent domain for a highway right of way, had not received "Notice of Location of Road" as provided by law and were therefore entitled to file claim for damages and for a determination of same. In accordance therewith, Stringer and Markley [1] filed a claim under § 48–315, W.C.S.1945, now § 24–53, W.S.1957, and related sections. The appraisers appointed to view the premises disallowed the claim. The board of county commissioners [2] approved the report of the appraisers, and plaintiffs appealed to the district court where the matter was tried to a jury under a stipulation that the sole issue was that of the damage, if any, sustained by the plaintiffs. It was also stipulated that a temporary (later permanent) injunction had prohibited the use by plaintiffs of tools on Krueger No. 2 well; that the instruments of plaintiffs' title be admitted, viz., a lease of the oil and gas rights on the Krueger land, for as long as the same were produced, and a sale of the oil wells located thereon; and that plaintiffs' oil well, Krueger No. 2, was located not less than 1.2 and not more than 1.33 feet within the defendant's right of way.[3] The jury returned a verdict generally in favor of defendant and against plaintiffs, and the court entered a judgment decreeing that plaintiffs take nothing.

Plaintiffs have based their appeal on the alleged error in:

(1) The court's refusing to give Instruction 5A and in giving Instructions 7 and 14.

(2) The court's rejecting plaintiffs' offer of proof with reference to erection of a refinery to consume oil produced in the area of the lease.

(3) The court's refusal of the offer to prove the replacement cost of the well.

(4) The jury's manifest failure to follow the court's instructions.

(5) The jury's rendering of a verdict contrary to and unsupported by the law or the evidence.

I

The crucial part of Instruction 5A proffered by plaintiffs was the statement:

"* * * the measure of damages to be awarded * * * if any, is the market value of their property, namely *the oil well* * * *." (Emphasis supplied.)

No authority is cited to justify the singling out of a portion of the property, the oil well, without reference to plaintiffs' entire property, the leasehold and wells. Defendant insists that the damage, if any, suffered by plaintiffs was the difference in the market value of their entire property before and after the taking. It relies upon Gillespie v. Board of Com'rs of Albany County, 47 Wyo. 1, 30 P.2d 797, 803, which, in passing upon the measure of damages to a person whose property was taken for a highway under the statute in question, said:

"* * * The jury were correctly instructed that the measure of damage, if any, was the difference between the market value of the ranch immediately prior to the establishment of the road and the value thereof immediately after such establishment. * * *"

Generally speaking, this rule is in accord with many of the leading authorities on eminent domain. 4 Nichols on Eminent Domain, 3d ed., § 12.2; 1 Orgel on Valuation under Eminent Domain, 2d ed., § 17; 18 Am.Jur. Eminent Domain § 242; 29 C.J.

1. Hereinafter referred to as plaintiffs.

2. Hereinafter referred to as defendant.

3. This was contrary to the evidence in the previous case and the statement in the opinion at 310 P.2d 731 that the well was outside the right of way.

S. Eminent Domain § 136. We think, however, that no more weight should be given to the statement in the Gillespie case than the facts therein warranted. There the amount of damages for the lands *actually taken* had already been determined prior to the trial in the district court, and thus the only issue was the dispute as to the damage to the lands *not taken*. Accordingly, the defendant here has sought to unduly enlarge the holding in that case. Moreover, we must bear in mind all statutes which the legislature has enacted to accomplish the taking of private property for highway purposes. Section 48–303, W.C.S.1945, now § 24–3, W.S.1957, and related statutes, under which the present action is brought, allow the county to take the property for the highway department and establish procedures governing same, while § 48–105, W.C.S.1945, now § 24–37, W.S.1957, allows the highway department to take the property under the procedure applicable to that permitting eminent domain by railroads (§ 3–6101 ff., W.C.S.1945, now § 1–754 ff., W.S.1957). Section 3–6123, W.C.S. 1945, now § 1–776, W.S.1957, specifically requires that the certificate of the commissioners or the verdict of the jury, as the case may be, contain the following items:

"First—An accurate description of the land taken;

"Second—The value of the land or property actually taken;

"Third—The damages, if any, to the land affected, but not taken, after deducting therefrom the value of the real benefits or advantages which may accrue to such land from the construction of said railroad."

It is a fundamental principle of statutory construction that to ascertain the meaning of a given law all statutes relating to the same subject or having the same general purpose shall be read in connection with it as constituting one law. They must be construed in harmony, else the law of the State would consist of disjointed and unharmonious parts with a conflicting and confusing result. Civic Ass'n of Wyoming v. Railway Motor Fuels, 57 Wyo. 213, 116 P.2d 236; Cuthbertson v. Union Pacific Coal Co., 50 Wyo. 441, 62 P.2d 311. In this situation, we cannot assume that the legislature intended to set up dissimilar criteria for the determination of damages.

Instruction 7, given by the court over the objection of plaintiffs, advised that the proper basis for the determination of damages was the difference between the market value of the plaintiffs' *premises* immediately prior to the establishment of the road and thereafter, taking into consideration all the elements found to exist from the evidence. The argument of the parties here and the instructions of the trial court would seem to indicate that the jury was in effect prevented from a consideration of the value of the property actually taken, i. e., Krueger No. 2.

Instruction 14, given by the court over the objection of plaintiffs, read:

"* * * the Board of County Commissioners of Big Horn County acquired an easement across the surface of the property and therefore the title to the minerals remained in the landowner or the lessees, * * * by such easement the Board of County Commissioners of Big Horn County did not acquire any of the minerals underlying the surface thereof."

Since there was no other instruction which related to mineral rights or which told the jury that the county commissioners were not by law permitted to interfere with the mineral rights of plaintiffs, the jury was only partially instructed on the subject. They were misled because Instruction 14 inferentially excluded from the jury's consideration the facts shown by the stipulation—that the oil well, Krueger No. 2, was within the right of way and that plaintiffs had in effect been prohibited from operating it by reason of the injunction theretofore issued. The instruction also tended to exclude from consideration the testimony of the witness who said that Krueger No.

2 produced one-half barrel of oil per day [4] and that it was capable of such production continuously for a period of twenty years or more.

█ From what we have said, it appears that this is a case which illustrates the difficulties encountered when by statute [5] instructions, unless erroneous, must be given by the court if requested by counsel. The duty for instructing the jury is primarily with the court, but from the right of a litigant to ask for special instructions has grown up the custom by which each counsel will submit all of the instructions which seem to him to be desirable to his cause. The result tends to be the promulgation of an uncoordinated series of statements which often lose sight of the true governing factors in the litigation. It follows that so far as instructions are concerned there was no merit in the contention of plaintiffs that the court erroneously rejected 5A, but there was a basis for the objections to Instructions 7 and 14.

## II

█ Plaintiffs offered to prove that at the time they purchased the oil wells and procured the lease there was no market for the Krueger oil and that in order to supply a market they had erected a refinery located close to the wells on the lease so as to make production profitable. This offer was rejected. As we have indicated, the proper basis for the determination of damages was the difference in the value of the leasehold and wells before and afterward, such value being comprised of two elements: (1) the value of the land or property actually taken; (2) the damages for the portion of the property not taken but injuriously affected, after deducting the value of the real benefits or advantages which may accrue to such property. No evidence was introduced as to either the marketability or the market value of plaintiffs' entire property, and any attempt to present evidence on the effect of plaintiffs' having built a refinery is of doubtful propriety. It is the well-established rule that where the property has no market value the value must be ascertained as nearly as possible by considering facts which would have weight between persons bargaining for the property. Thibadeau v. Clarinda Copper Mining Co., 49 Idaho 504, 289 P. 608; Tyson Creek R. Co. v. Empire Mill Co., 31 Idaho 580, 174 P. 1004; Idaho-Western R. Co. v. Columbia Conference of Evangelical Luthern Augustana Synod, 20 Idaho 568, 119 P. 60, 38 L.R.A.,N.S., 497; Union Electric Light & Power Co. v. Snyder Estate Co., 8 Cir., 65 F.2d 297; 18 Am.Jur. Eminent Domain § 242. The evidence which would have been elicited, had plaintiffs been allowed to prove that which they offered, might have had some weight between persons bargaining for the property had there been laid a proper basis by showing its effect upon marketability and market value. However, since no such basis was presented by the plaintiffs and since other evidence was adduced before the jury showing that there was a market for the oil at definite prices, the rejection of the evidence regarding the refinery was not reversible error.

## III

█ Plaintiffs' offer to prove the replacement cost of Krueger No. 2 well was correctly denied by the court. There was no ground for evidence of cost of replacing the improvement since that which was appropriated had a market value determinable by the usual test of what it was worth before and after.[6] The geologist, Lowe, testified that the market value of the oil well at the time of the taking was $8,500, and it is manifest that the injunction rendered it of no value whatever to the plaintiffs.

4. One witness stated that it produced one and a half barrels of oil per day.

5. Section 3-2408, W.C.S.1945, now § 1-124, W.S.1957.

6. 2 Orgel on Valuation under Eminent Domain, 2d ed., § 199; 5 Nichols on Eminent Domain, 3d ed., § 20.1; see also 18 Am. Jur. Eminent Domain § 253.

There is a further reason why this evidence should have been rejected. Krueger No. 2 had in it tubing and an impression block which apparently could not be removed and which interfered with, but did not entirely prevent, the well's being used. However, the well was incapable of normal production, and replacement cost would have been so entirely unrelated that such evidence would have tended to confuse rather than to enlighten the jury.

## IV and V

■ Plaintiffs insist that the jury manifestly failed to follow the court's Instruction 8, which discussed the market value and the method of computing it; Instruction 12, which said that they might consider the actual income of plaintiffs from the property taken by the condemnation action during the period of ownership; and Instruction 13, which said that just compensation is the payment of an amount of money which would make a person whole so that he would be no poorer by reason of the taking. Plaintiffs further argue that the verdict was contrary to and unsupported by the law or the evidence. Actually, the jury were assigned an almost impossible task in trying to reconcile and apply the instructions relating to market value. For instance, Instruction 2 speaks of the damages which are to be paid to plaintiffs for the *taking of their property*. Instruction 7 alludes to the difference between the *market value of the premises* immediately prior to and following the establishment of the road. Instruction 8 discusses the market value of *property taken for public use*, while Instruction 12, in mentioning the property, refers to that *taken by the condemnation action*. It is thus evident that different instructions discuss the value of different portions of the property and no instruction clearly sets out all of the elements which should have been considered by the jury in arriving at their verdict. Probably any resulting uncertainty would have tended to be cured if there had been used the form of verdict provided in § 3-

6123, W.C.S.1945, now § 1-776, W.S.1957, which would have pointed out the elements to have been considered. To say it another way, plaintiffs presented clear and uncontradicted evidence of the market value of Krueger No. 2 prior to the time of the taking. The injunction which prevented plaintiffs from using Krueger No. 2 and the stipulation that it was within the highway right of way shows that the oil well was rendered valueless to plaintiffs by reason of defendant's taking. Nevertheless, the jury under an instruction that the measure of the damages was the difference in the before-and-after market value of the *premises* would seem to have been prevented from considering anything short of the difference in such market value for the entire area.

The instruction regarding the actual income of plaintiffs was not helpful because the evidence regarding income related principally to that from all three wells without designation as to any one of them.

The instruction on just compensation was so general that it would have seemed to have been of little benefit for practical purposes.

Counsel for defendant argue that the measure of damages to be applied in this case was the difference in the before-and-after value of the plaintiffs' entire leasehold interest. They say that because plaintiffs by applying certain modern methods to two of the wells receive as much from these two as they formerly did from all three there was no loss. Such argument is indeed specious and overlooks the fact that there was an actual taking of plaintiffs' property. It also ignores the cost and effort required to increase the production of the other two wells.

It might be urged that plaintiffs' request for relief should be rejected because they failed to present evidence to the jury as to the market value of the entire premises, both the property actually taken and that affected but not taken. It is true that no before-and-after value of the entire lease-

hold was proved. However, the geologist, Lowe, gave the market value of the well as $8,500, and there was no tenable evidence to the contrary. It follows therefore that if the jury from a reading of the instructions had understood the law to be as we have here indicated they would have had no alternative but to return a verdict for

$8,500, the uncontroverted value of the property actually taken.[7]

For the reasons hereinabove recited, the judgment must be reversed, and the cause is remanded to the trial court for further proceedings consistent with the views herein expressed.

Reversed and remanded.

7. From both this record and that of the preceding case, it is clear that the highway commission in excluding the rectangular notch adjacent to Krueger No. 2 narrowed the right of way from 200 to 150 feet in the hope of avoiding interference with the operation of the well. It is now obvious that this hope was un-justified by the facts since the well has been rendered unusable in any event. Although it would seem that logically defendant's payment of damages should entitle it to use of the land previously excluded, this matter was not within the issues.