Cecil A. LAMMEY and Mildred Lammey,
Appellants (Defendants below),

v.

PRODUCERS LIVESTOCK CREDIT COR-
PORATION, a corporation, Appel-
lee (Plaintiff below).

No. 3791.

Supreme Court of Wyoming.

Jan. 16, 1970.

W. H. Vines, of Jones & Vines, Wheatland, for appellants.

D. N. Sherard, Wheatland, for appellee.

Before GRAY, C. J., and McINTYRE, PARKER and McEWAN, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Appellants, Cecil A. Lammey and Mildred Lammey, have appealed from a judgment of the district court which found $34,709.72 owing from appellants to appellee, Producers Livestock Credit Corporation, on a mortgage indebtedness; and found that there was a valid mortgage lien for such indebtedness upon real property of appellants. The judgment ordered that the mortgage be foreclosed and the mortgaged property sold.

Five points are raised by appellants in support of their appeal. These points are:

1. Whether the district court erred in not granting a continuance at the time of trial.

2. Whether a valid mortgage existed as a lien on the real property of the Lammeys which could be foreclosed.

3. Whether a valid "Collateral Agreement" existed which could be the subject of a foreclosure action.

4. Whether the original notes which the mortgage and Collateral Agreement were incident to were paid and discharged, making the original mortgage and Collateral Agreement of no further legal effect.

5. Whether, if the mortgage and Collateral Agreement were still effective, the mortgagee had waived its right to foreclose its mortgage.

We have found no error in connection with any of the questions raised by appellants, and we do not consider exhaustive discussions of such questions necessary. We will, however, comment on each of the points.

*Point 1.* Subsequent to the filing of its complaint, plaintiff-Producers paid $5,254.80 to a prior (first) mortgagee in order to protect the rights of itself and of the defendants, Mr. and Mrs. Lammey. In addition, it paid $3,292.87 for delinquent taxes and water assessments which were liens against the mortgaged lands.

At the time of trial, and before trial got under way, plaintiff moved to amend its complaint to show these additional sums due from the mortgagors. Thereupon the defendants requested a continuance of the trial. The court denied the request for continuance and permitted the amendment.

Rule 15, W.R.C.P., allows for the amendment of pleadings by leave of court and specifies that leave shall be freely given when justice so requires. Appellants do not claim or show they were surprised or prejudiced in their defense by the amendment which was allowed. Even now they do not dispute that the alleged advances were made by Producers. Moreover, the mortgage held by Producers authorized the advancement of taxes, assessments, and payment on the first mortgage. This is not disputed by the mortgagors.

Appellants have shown us no reason to believe they were surprised or prejudiced in any way by the allowance of the requested amendment; or that the trial court abused its discretion in allowing such amendment. It is axiomatic that procedures, in order to warrant a reversal, must be both erroneous and also prejudicial; and the burden is on the appealing litigant to show prejudicial error. Robertson v. State Highway Commission, Wyo., 450 P.2d 1003, 1004–1005.

Mention has been made of the fact that plaintiff also, at the time trial was ready to commence, moved to join a third mortgagee as a party to the suit. Counsel for defendants objected. The court indi-

cated it would allow plaintiff's motion to bring in and join the third mortgagee. However, plaintiff immediately moved, "upon further consideration," that the motion to make the third mortgagee a party be withdrawn. Whereupon, the court granted the motion to withdraw plaintiff's motion to bring in the other mortgage. We fail to see how appellants can complain of this action. They have shown us no reason to believe there was either error or prejudice in connection with such action.

*Points 2, 3 and 4.* Appellants have chosen to consider together points designated by them as 2, 3 and 4. We shall therefore do the same.

On September 9, 1965, Mr. and Mrs. Lammey executed for Producers an instrument designated "Collateral Agreement." In this instrument Lammeys acknowledged a total indebtedness in the principal sum of $167,415.36. As collateral security for the total indebtedness, a "Collateral Note" for $50,000 and a "Mortgage Deed" for $50,000 were given by the Lammeys. The mortgage covered 575 acres of land.

The evidence indicates parties were in agreement on March 14, 1967 that the balance owing on the $50,000 note and mortgage was $21,895.25. The mortgagors were allowed an extension of time for approximately one year and in consequence thereof executed a new note for $21,895.25. This note was payable December 1, 1967 instead of December 20, 1966 (the due date of the original $50,000 note).

Subsequent to this, the mortgagee advanced payment of the 1966 real property taxes and water assessments of the Wheatland Irrigation District. In consequence, another note for $3,247.24 was executed by mortgagors. It was dated May 3, 1967 and was payable December 1, 1967.

In points 2, 3 and 4, appellants are now claiming the notes for $21,895.25 and for $3,247.24 paid the balance due on the $50,-000 note; that this discharged the $50,000

note and mortgage; and that the only remedy left to the mortgagee (Producers) is to sue for a personal judgment against the debtors. In other words, appellants are saying Producers is not entitled to foreclose the $50,000 mortgage, which is what the district court ordered in its judgment.

Not only would we decree an inequitable result if we followed appellants' theory and argument, but we would be overlooking some very important considerations in the case.

The collateral agreement which was executed at the time the $50,000 mortgage was given expressly provided that the $50,000 note and mortgage were pledged for the payment of the total indebtedness of $167,415.36 "and all other indebtedness of the undersigned to the said Corporation or the holder of said indebtedness, contracted or to be contracted, and due or to become due."

Moreover, the collateral agreement further provided:

"IT IS THE INTENTION That this collateral agreement shall be in full force and effect for the purpose of securing the indebtedness evidenced by the promissory notes first herein mentioned, *and all extensions and renewal thereof, and any other indebtedness which may arise or be created between the undersigned and the said Corporation* * * *." (Emphasis supplied.)

It is entirely clear that the March 14, 1967 note for $21,895.25 and the May 3, 1967 note for $3,247.24 were extensions and renewals. Even if they were considered as something other than extensions or renewals, they surely would constitute some "other indebtedness" between the Lammeys and Producers. Hence, they would be secured by the collateral agreement, the collateral note, and the $50,000 mortgage.

On March 9, 1968, Producers' attorney executed an instrument for Mr. and Mrs.

Lammey acknowledging a payment from the Lammeys to Producers in the amount of $13,500. In this instrument the attorney balanced accounts for Lammeys thusly:

"Promissory Note dated September 9, 1965 in the amount of $50,000.00 providing for the payment of interest thereon at the rate of six per cent per annum and which promissory note was extended and renewed by a second promissory note executed by Cecil A. Lammey and Mildred Lammey dated March 14, 1967 providing for the payment of interest at the rate of seven per cent per annum and this note being in the principal amount of $21,895.25—principal balance due hereon ................. $21,895.25

"Producers Livestock Credit Corporation, pursuant to note and mortgage advanced and paid $3,247.24 evidenced by promissory note dated May 3, 1967—principal balance due .............. 3,247.24

"Producers paid Jan. 1, 1968 payment to Connecticut Mutual Insurance Com ...................................... 5,388.51

"New York Life Insurance premium paid to Feb 1, 1968 ...... 335.95

"Loan Expense ........................................ 7.00

"Advancement and payment of 1967 real property taxes and Wheatland Irrigation District Assess ..................... 3,038.83

"Interest Accrued to March 9, 1968 ....................... 1,886.44

"Balance to Date $35,799.22

"That at this date Cecil A. Lammey and Mildred Lammey are credited the sum of .................................... 13,500.00

"Leaving a Balance After This Date of .................... $22,299.22"

---

With respect to the unpaid balance of $22,299.22 which Producers' attorney showed was still owing from Lammeys to Producers, the attorney extended the time for it to be paid and indicated it was payable by a payment of $5,000 on October 1, 1968 and the balance of $17,299.22 (with accruing interest) on March 1, 1969. The instrument then recited that, upon the failure of Lammeys to make these payments, Producers shall immediately proceed to foreclose its mortgage and collateral agreement.

The balance of accounts which Producers' attorney made for the Lammeys showed that the $50,000 note was "extended and renewed" by the $21,895.25 note; and that, pursuant to the $50,000 note and mortgage, Producers had "advanced and paid" $3,247.24 as evidenced by the May 3, 1967 note for that amount.

■ By written consent endorsed on the balance of accounts, Mr. and Mrs. Lammey acknowledged that they hereby "consent to the application of the payment above set forth." Nothing more is needed to verify that Producers still had a mortgage lien, under its $50,000 mortgage, for the balance owing to it from the Lammeys.

■ Appellants suggest the mortgagee cannot foreclose because the extension notes of $21,895.25 and $3,247.24 called for 7% interest instead of 6% as provided for in the $50,000 collateral note. No authority is shown for this claim, and we see no reason to entertain it. We will only comment that renewal terms were a matter of agreement between the parties. The renewal notes were signed by the mortgagors, and they cannot be heard to say they did not agree to renewal terms.

*Point 5.* The payment of $13,500 which Producers' attorney acknowledged March 9, 1968 was made possible because Mr. and Mrs. Lammey leased their property at that time to third parties. In addition to the initial lease payment, which was used to make the payment of $13,500 to Producers, lessees were to pay $4,500 on March 1, 1969; $4,000 on October 1, 1969; $4,500 on March 1, 1970; and $4,000 on October 1, 1970.

Producers, through its attorney, consented to the lease in these words:

"Producers Livestock Credit Corp., a Corporation, by and through its authorized attorney hereby approves the above lease for the full term thereof and warrants to Lessees that said Corp., will not disturb Lessees peaceable enjoyment of said premises during said term."

Appellants contend, in their point 5, that Producers waived its right to foreclose when it approved the lease. It is claimed the approval left Producers with the right to receive rental payments from the lease and nothing more.

There simply is no basis in fact for saying Producers agreed to any further extension of time for mortgage payments when it approved the lease. By consenting to the lease, Producers agreed to nothing, except that it promised: Producers "will not disturb Lessees peaceable enjoyment of said premises during said term."

By foreclosing its mortgage, Producers does not need to disturb lessees' peaceable enjoyment of the premises. We assume it has not done so.

*Summary.* As we indicated earlier, we find no error in connection with any of the points argued for appellants. The judgment appealed from must therefore be affirmed.

Affirmed.