CANYON VIEW RANCH, a corporation, William J. Essert, Wayne S. Hunter, John Drummond Smith, and Spool Ranch Co., a corporation, Appellants (Defendants below),

Bert Eugene Baker (Defendant below),

v.

BASIN ELECTRIC POWER CORPORATION, a corporation, Appellee (Plaintiff below).

No. 5359.

Supreme Court of Wyoming.

May 11, 1981.

David F. Palmerlee and Lawrence A. Yonkee of Redle, Yonkee & Arney, Sheridan, for appellants.

D. N. Sherard and Richard A. Stacy, Wheatland, for appellee.

Before ROSE, C. J.,* and McCLINTOCK,** RAPER,*** THOMAS, and ROONEY, JJ.

THOMAS, Justice.

This appeal is taken by several landowners from damage awards made to them after a jury trial in a condemnation action. The action was brought to obtain easements pursuant to order of the court entered March 30, 1981.

* Chief Justice since January 5, 1981.

** Retired March 26, 1981, but continued to participate in the decision of the court in this case

*** Chief Justice at the time of oral argument.

for two high-voltage power transmission lines. The most significant question raised in the appeal is whether the district court correctly instructed the jury as to the proper measure of damages in such a condemnation action. Other questions raised relate to the exclusion from evidence of written materials describing perceived problems and dangers from such power lines, and the admission into evidence of an order of the Industrial Siting Council which contained requirements that Basin Electric Power Cooperative mitigate certain damages arising in connection with the construction and maintenance of the power lines. We will hold that there was no error in the instructions given by the trial court nor in its rulings with respect to the evidence. The judgment of the trial court will be affirmed.

The action was instituted by a Complaint in Condemnation which was filed on April 12, 1978, and pursuant to which Basin Electric Power Cooperative, under the authority granted by § 1–26–401, W.S.1977, sought to obtain right-of-way easements for two electric power transmission lines. The two easements sought for the transmission lines extend in a generally southeasterly direction from the Laramie River Station of the Missouri Basin power project near Wheatland, Wyoming, to points on the border of Wyoming and Nebraska. The power lines are known as the Laramie River Station to Sidney transmission line and the Laramie River Station to Stegall transmission line. As to each landowner over whose lands one or both of the proposed easements would cross, the easement described a "strip of land 200 feet in width, lying 100 feet on each side of" a particularly described centerline. The action proceeded in accordance with Rule 71.1 of the Wyoming Rules of Civil Procedure.

As noted, the transmission lines in issue run in a generally southeasterly direction from the Laramie River Station to the Nebraska border. The lands of Canyon View Ranch over which the transmission lines cross are located approximately 10 to 15 miles north northwest of Hawk Springs, Wyoming. The William J. Essert lands are located approximately 15 miles west northwest of Hawk Springs, Wyoming. The lands of John Drummond Smith are found from 11 to 14 miles west northwest of Hawk Springs, Wyoming; while the Spool Ranch Co. lands lie in two parcels, one of which is 11 miles west northwest of Hawk Springs, Wyoming, and the other 6 miles west southwest of Hawk Springs. The lands of Wayne S. Hunter are approximately 8½ miles west of Hawk Springs. All of these lands are located in Townships 21 North, Range 63 West, 21 North, Range 64 West, 22 North, Range 63 West, and 22 North, Range 64 West, 6th Principal Meridian, in Goshen County, Wyoming. These landowners are referred to collectively as appellants.

On May 16, 1978, an Order Appointing Appraisers was filed. On November 16, 1978, the Certificate of Appraisers' Awards was filed. An award was made with respect to the lands of each of the appellants here. As to each of them, the award was apportioned between the fair market value of the land within the 200-foot corridor as of May 26, 1978, and the diminution in value after the taking of the remaining lands of each such appellant. As to the parties in this appeal, the appraisers' awards were as follows:

| Appellant | Fair Market Value of 200-ft. Corridor | Diminution in Value of Remaining Lands | Total Damages |
|---|---|---|---|
| Canyon View Ranch, a corporation | $14,261.50 | $82,050.18 | $96,311.68 |
| William J. Essert | 1,850.00 | 7,007.00 | 8,857.00 |

Cite as, Wyo., 628 P.2d 530

| Appellant | Fair Market Value of 200-ft. Corridor | Diminution in Value of Remaining Lands | Total Damages |
|---|---|---|---|
| Wayne S. Hunter | 10,187.10 | 54,643.67 | 64,830.77 |
| John Drummond Smith | 5,995.70 | 18,947.96 | 24,943.66 |
| Spool Ranch Co., a corporation | 15,091.45 | 65,792.80 | 80,884.25 [1] |

On December 4, 1978, Basin Electric Power Cooperative filed a demand for a jury trial with respect to the question of damages to the landowners. The case then came on to be tried before a jury between the dates of June 25, 1979, and July 6, 1979. The jury verdicts as to each of the respective appellants were as follows:

| | |
|---|---|
| Canyon View Ranch, a corporation | $4,709.00 |
| William J. Essert | 6,600.00 |
| Wayne S. Hunter | 4,210.40 |
| John Drummond Smith | 2,152.40 |
| Spool Ranch Co., a corporation | 7,993.90 |

The Judgment on Verdict was entered on August 30, 1979, and this appeal is taken from that judgment.

At the trial the damage theory of the several appellants was that they were entitled to the full value of the area of land within the 200-foot corridor through which the transmission lines would extend, and that in addition they were entitled to the difference in value before the taking and after the taking of the remaining lands of each appellant. The theory of Basin Electric Power Cooperative was that the landowners were entitled to damages representing the difference in value of their lands before the condemnation of the easements and after the condemnation of the easements, but that they were not entitled to the separate factors as presented in the theory of the appellants.

The several appellants each testified as to the value of their lands. With the exception of Appellant Essert it essentially was their view that the taking of the power line easements reduced the value of their lands by about 10 percent. They then produced an expert witness who testified as to total damages with respect to the lands other than the Essert lands as follows:

| | |
|---|---|
| Canyon View Ranch | $96,311.69 |
| John Drummond Smith | 24,943.66 |
| Spool Ranch Co. | 79,511.35 |
| Wayne Hunter | 64,830.77 |

Another expert witness testified that in his opinion the damage to the Essert lands was $45,000. The expert witness for the appellee testified that in his opinion there was no measurable difference in the value of the appellants' lands before the taking and after the taking based upon market value comparisons. He did testify, however, that a certain amount of the surface was lost to the appellants which consisted of the area actually covered by the towers for the transmission lines and a strip which he described as about 25 feet wide running the length of the easement, which would be a road used in connection with construction and maintenance of the transmission lines. He also testified that they might have a temporary loss of the lands within the 200-foot easement for about two years during the construction of the power lines. Based upon these latter two factors he then gave his estimate of total damage to the lands of each of the appellants as follows:

| | |
|---|---|
| Canyon View Ranch | $1,620.00 |
| John Drummond Smith | 716.30 |
| Spool Ranch Co. | 1,647.10 |
| Wayne S. Hunter | 1,441.28 |
| William J. Essert | 276.49 |

1. The Spool Ranch Co. award was divided between two parcels, one of which the ranch was purchasing at the time of the appraisal.

It was appellee's expert's opinion that the Essert lands were not suited to development for irrigated farming, while other witnesses for Essert and Essert himself gave a contrary opinion. As will be noted, the damages assessed by the jury were within the ranges of expert testimony but were substantially closer to the lower end of the scale. They apparently did find a prospect for irrigated development of the Essert lands since that was the next to the largest damage award submitted by the jury.

The instructions on damages given by the district court read as follows:

"Instruction No. 7

"The measure of just compensation to be paid to the defendants is the difference between the fair market value of each defendant's lands immediately prior to the imposition of the easement and the fair market value of each defendant's lands immediately thereafter."

"Instruction No. 8

"In determining the reduction, if any, in the fair market value of each defendant's lands, you may consider all factors which you find to have an effect on fair market value. However, any factors which you consider must be direct and certain and may not be remote, imaginary, or speculative.

"In determining damages, if any, to each defendant's remaining land, you may consider every lawful use the Plaintiff may make of the land condemned, and you may consider every element of damage affecting the fair market value of the remaining lands resulting from construction, operation, inspection, maintenance and the presence of the electric power transmission lines."

At the trial the appellants offered as exhibits certain publications consisting of newspaper and magazine articles and environmental impact statements. Each of these publications included assertions with respect to the disadvantages, problems, hazards and possible deleterious effects of high-tension power lines.[2] The purpose of the appellants in offering these exhibits was to demonstrate that there was widespread knowledge of such views, and that this had an impact upon the marketplace so far as lands over which such power lines were constructed were concerned. This limitation was claimed to overcome the objection that the exhibits were hearsay. The district court refused to admit the evidence on the bases that the exhibits were irrelevant and were hearsay and that the potential for prejudice outweighed the probative value. In his remarks he also indicated concern with confusion of the issues and a waste of trial time.

The appellee offered into evidence at the trial the Order of the Industrial Siting Council which contained certain conditions that Basin Electric Power Cooperative was required to meet in connection with the construction and maintenance of the transmission lines. These requirements were imposed upon Basin Electric Power Cooperative as a result of the contest of the plant permit sought by Basin Electric Power Cooperative by a nonprofit corporation known as the Goshen-Platte Protective Association. The first landowner called to the witness stand, Stanley Smith, who is one of the stockholders of Canyon View Ranch, testified that he was very concerned about the adverse impact upon his lands because of the construction activities and maintenance

2. The proffered exhibits were Draft Environmental Statement on the Role of the Bonneville Power Administration in the Pacific Northwest Power Supply System; Draft Environmental Statement on the Proposed Colstrip Project, Rosebud County, Montana; *The Christian Science Monitor*, March 14, 1979, "Are high-tension lines safe?"; *Rocky Mountain News*, August 24, 1978, "Family finds life a bit shocking in and around the homestead"; *Denver Post*, "Health Hazards Claimed: High-Voltage Power Lines Protested"; *Rocky Mountain News*, April 10, 1977, "Landowners vs. 765,000 Volts"; *Newsweek*, July 17, 1978, "The Flap Over the Zap"; *Newsweek*, March 27, 1975, "Farmers Balk at Power Line"; *Science*, "Electromagnetic Pollution"; *Science*, April 21, 1979, "Electric Power Lines Linked with Cancer"; *Environment Magazine*, May 1978, "Danger: High Voltage"; *Environment*, November 1978, "High Voltage Lines, Hazard at a Distance."

activities relating to the power lines. During cross-examination counsel for Basin Electric Power Cooperative offered the Siting Council order on the theory that it, with specificity, dealt with each of the concerns expressed by the landowner, and required Basin Electric Power Cooperative to protect the lands from the kinds of damages over which Mr. Smith expressed concern. Over the objection of the appellants, the exhibit was received into evidence.

As stated by the appellants in their brief, the issues presented in this appeal are as follows:

"The measure of damage instruction failed to instruct the jury that appellants were entitled to damages for the easement taken *plus* damage to the remaining lands."

"Exclusion of certain exhibits offered by appellants to show widespread public knowledge of and concern with problems and hazards associated with transmission lines was prejudicial error."

"Admission of the order of the Industrial Siting Council and the associated promises of the appellee to comply with that order for consideration and mitigation of damages was prejudicial error."

While the appellee states the issues differently from the statement by the appellants, the argument in the case meets those issues directly.

### THE EVIDENTIARY ISSUES

We will treat together the assertions of error relating to both the evidence which was excluded and the evidence which was admitted. With respect to both of these rulings we approach the matter adhering to the concept which we have heretofore recognized that the admission of evidence or the exclusion of evidence is within the discretion of a trial court in Wyoming, and that on appeal it is the appellant's burden to demonstrate that the trial court abused that discretion. Absent a clear showing of abuse of discretion, the trial court's ruling will not be disturbed. *Perry v. Vaught*, Wyo., 624 P.2d 776 (1981); *Sears v. Summit, Inc.*, Wyo., 616 P.2d 765 (1981); *Key v.*

*State*, Wyo., 616 P.2d 774 (1980); *Sanville v. State*, Wyo., 593 P.2d 1340 (1979); *Elliott v. State*, Wyo., 600 P.2d 1044 (1979); *Nimmo v. State*, Wyo., 603 P.2d 386 (1979). Cf., *State Highway Commission of Wyoming v. Joe Miller Land Company*, Wyo., 467 P.2d 450 (1970). The adoption of the Wyoming Rules of Evidence, while providing more concrete standards in some areas, has not essentially altered this rule.

### A. THE EXCLUDED EXHIBITS

The issue with respect to the exhibits which appellants sought to introduce, and which were not admitted by the district court, was first posed in a Motion in Limine No. 3 filed by the appellee after receiving notice of the exhibits which the appellants intended to offer. As to Exhibits BA, BB and BC (environmental reports relating to transmission lines at other places), the Motion in Limine indicated that the appellee's objection was that these exhibits were "irrelevant." With respect to Exhibits BN, BO, BP, BQ, BR, BS, BU, BV, BW and BX (the newspaper and magazine articles), the objection made by the appellee in the Motion in Limine was that these exhibits constituted "hearsay."

The argument before the court occurred on the first day of trial in this case. The essence of the appellants' position was that the environmental impact statements and the newspaper articles were offered, not to prove the truth of the matter contained in the articles, but to show that the information was widely available. The appellants contended as to relevancy that these exhibits manifested knowledge of potential buyers of ranching and farming lands, and that such knowledge would cause lands over which electric transmission lines passed to be less desirable to prospective purchasers. The appellants apparently then and now are relying upon the definition found in Rule 801, W.R.E., as follows:

"(c) *Hearsay.*—'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

The appellee argued that the material sought to be introduced was hearsay, that it was not relevant, and that if it were relevant it still was subject to exclusion by the trial court under the provisions of Rule 403, W.R.E., which provides as follows:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In making his rulings upon these exhibits, the trial judge made the following statements:

"I certainly think they are irrelevant, and I am—in the first place, I don't think the jury would ever take time to read those thousands of pages. I don't think they will ever read it if they give it to them. They will look at the pictures, but I think they are very irrelevant in Goshen County. We don't have fruit trees, snowslides. It is entirely improper as far as the Court feels and I will grant your motion [objection] as to those exhibits—that is AZ, BA, BB, and BC. [The inadmissibility of AZ is not contested on appeal.]"

It appears from other comments of the trial judge that it was his intention to exclude the newspaper and magazine articles because they were hearsay and because he concluded that they also were irrelevant and prejudicial. With respect to the environmental impact statements, his ruling primarily was premised upon his conclusion that they were irrelevant.

The appellants here argue that they were entitled to demonstrate that the material in the excluded exhibits was available in the community and a matter of widespread public knowledge. They contend that the exhibits evidence the same problems relating to aesthetics, erosion and hazards, which were the subject of testimony by the appellants and their appraisers. In this regard it should be noted that in a later colloquy the court indicated that an expert would be permitted to go further in this regard than the earlier ruling excluding the magazine

and newspaper articles would indicate because he could explain how he based his opinion premised upon what he runs into every day.

Rule 401, W.R.E., provides:

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The appellants cite in support of the relevancy of these exhibits *Hotel Riveria, Inc., v. Short*, 80 Nev. 505, 396 P.2d 855, 20 A.L.R.3d 648 (1964), and *Fanning v. Mapco, Inc.*, Iowa, 181 N.W.2d 190 (1970). *Hotel Riveria, Inc., v. Short*, supra, must be distinguished because there the articles were about one of the parties to the action. These articles did not relate to any of the parties to this particular condemnation suit. In *Fanning v. Mapco, Inc.*, supra, the court held that the articles should have been excluded, requiring foundation demonstrating that the publication is one of general circulation in the community to justify the conclusion that it is a matter of common knowledge there.

 In this instance the appellants offered to prove that "those are articles appearing in magazines that are commonly distributed in this community or in general circulation in the community, and all of them are taken from the local library here in Torrington." We are not certain that this offer of proof would satisfy the foundation requirement set forth in *Fanning v. Mapco, Inc.*, supra, but recalling that the determination of relevancy rests largely within the discretion of the trial court (e.g., *Goodman v. State*, Wyo., 601 P.2d 178 (1979); *Peterson v. State*, Wyo., 586 P.2d 144 (1978); *Daellenbach v. State*, Wyo., 562 P.2d 679 (1977)), we agree with the district court that the relevancy of these offered exhibits certainly was suspect. These exhibits do constitute statements other than statements made by the authors while testifying at the trial or hearing, and as such they are hearsay within the definition of Rule 801(c), W.R.E., even though the appel-

lants asserted their intention to limit their offer of the exhibits by not offering them to prove the truth of the matter asserted. In order to reach the point claimed by the appellants, however, the jury would have to infer that a prospective buyer, knowing of such articles, would accept the information contained in them as true, and would then be possessed of a subjective attitude that would cause him to pay less for the appellants' lands. In order to reach the second inference, the jury would have to accept the truth of the information in these articles. While our rules may permit such conjecture on the part of expert witnesses in bolstering their opinions,[3] we conclude that it is such a speculative way of proving a state of mind that the trial court was entirely justified in concluding that the exhibits were not relevant.

Our conclusion with respect to the ruling by the trial court that these exhibits were not relevant alone justifies affirming the trial judge on this issue. His ruling, however, was not limited to relevancy, and we will discuss the other bases for his ruling. While, as noted, the appellants stated that they would limit the offer of these exhibits to simply show that the information was available, we question the validity of that advice. For either potential buyers, or members of the jury, the conclusion that knowledge of the articles would depress the market value would have to depend upon acceptance of the facts asserted in the articles. The appellants, however, made no offer to produce any witness to testify as to the truth or credibility of the information in these exhibits, nor were any of the authors presented as witnesses. Under these circumstances, the appellee would have had no opportunity to cross-examine any witness as to the information set forth in the exhibits, or even to controvert the effect of such evidence. *Black Watch Farms v. Baldwin*, Wyo., 474 P.2d 297 (1970); *Holm v. State*, Wyo., 404 P.2d 740 (1965). Given that combination of circumstances, excluding the exhibits as hearsay was sound.

We also agree with the apparent conclusion of the trial court that the exhibits were excludable under Rule 403, W.R.E. Although the appellants argue that the trial court did not perform the weighing function indicated by this rule, we do not agree with that conclusion. The tenor of the articles indeed is inflammatory and antagonistic with respect to high-voltage power lines. Given the hearsay nature of the exhibits, together with the trial court's conclusion as to relevancy, and other comments of the trial judge to the effect that, "I don't think the jury would ever take time to read those thousands of pages," "we don't have fruit trees, snowslides [in Goshen County]," and "I think it's irrelevant and prejudicial as well," this record evidences to us that the trial court did weigh the probative value against the danger of unfair prejudice, confusion of the issues, or misleading the jury, and properly excluded the exhibits for that reason as well. Certainly it did not exceed the bounds of its discretion in so doing. *Elliott v. State, supra; United States v. Sangrey*, 586 F.2d 1312 (9th Cir. 1978).

## B. THE ADMISSION OF THE SITING COUNCIL ORDER

Pursuant to Wyoming statutes, Basin Electric Power Cooperative obtained a permit from the Industrial Siting Council. Section 35–12–106(a), W.S.1977. When a permit is issued, the Siting Council is required to state any "terms and conditions in detail" (§ 35–12–114(d), W.S.1977), and the statute justifies revocation or suspension of the permit for failure to comply with the terms and conditions. Section 35–12–117, W.S.1977. Furthermore, a permittee is subject to a civil penalty of up to $10,000 per day for failure to maintain, construct or operate the facility in compliance with the terms and conditions of its permit. Section 35–12–119, W.S.1977. The permits for the construction of transmission lines involved in this case were issued pursuant to these statutes.

---

**3.** In *City of Cheyenne v. Frangos*, Wyo., 487 P.2d 804 (1971), this court espoused the concept that while an expert may use hearsay as a ground for his opinion, that does not make the hearsay admissible into evidence.

In the administrative proceeding leading to the issuance of the permit, the Goshen-Platte Protective Association, a nonprofit corporation, very vigorously contested the issuance of the permit. The landowners in this case who are appellants here all agree that they were members of the Goshen-Platte Protective Association. (If the land was in corporate ownership a key officer belonged to the Association.) During the trial Stanley Smith, one of the officers of the Canyon View Ranch, a corporation, testified with respect to damages. His testimony included what he visualized as deleterious effects, including problems of wind erosion, control of weeds, and inhibitions upon irrigations for farming operations. His testimony was that the market value of his land was decreased by 10 percent because of this easement and these factors were relied upon in his estimate of a 10 percent reduction in land value.

Upon cross-examination, Mr. Smith was asked specifically if he was concerned that the project would not reseed and reclaim the disturbed land; if he was concerned that the project would not maintain regular surveillance to control erosion and noxious weeds; if he was concerned that he would not receive advance notice when the project people entered the easement for purposes of doing maintenance except in emergencies; if he was concerned that the project would not clear all the debris and trash from the right-of-way after construction is completed; if he was concerned about the effect of the transmission line on radio and television reception; and if he was concerned the fences, windmills, and other structures would not be properly grounded. Mr. Smith answered affirmatively to all of these questions, and then stated specifically that these factors were considered as adverse effects which helped justify his claim of damage to his land to the extent of 10 percent of its value.

It was in this context that the Siting Council order was offered into evidence. A perusal of the order discloses that there were encompassed therein specific conditions requiring the appellee to mitigate and control each of the factors that Mr. Smith testified he was concerned about. These conditions were the subject of a stipulation of the Siting Council proceeding, and they were agreed to by the Goshen-Platte Protective Association and the appellee. In offering these exhibits, the appellee urged upon the court that if it were not permitted to show the Siting Council permit there would be an opportunity for the landowners to recover damages which would not occur if the Siting Council order were complied with, and that, in effect, the landowners would be paid for deleterious effects upon their land which they would not suffer if the order were complied with. The trial judge indicated in his ruling that he would have preferred not to admit the Siting Council order, but he felt it was necessary to do so in order to protect the appellee from the possibility of a double recovery.

The appellee lists four reasons to support the propriety of admitting the order into evidence:

"1. The duties and obligations imposed upon condemnor by the contract with G.P.P.A. [Goshen-Platte Protective Association] and the Siting Order were not 'unaccepted promises'.

"2. Prior to their inclusion in the Siting Order, the duties and obligations imposed on the condemnor were a part of a contract between condemnor and G.P.P.A. of which all of the landowner Appellants are members.

"3. The Siting Council Order is unique. It is binding upon Appellee and requires the project to make certain efforts to mitigate damages as part of its plans for the construction, operation and maintenance of the line.

"4. Adoption of the Appellants' contentions would result in double compensation and unjust enrichment to the Appellants at the expense of the consumer."

Conversely, the appellants argue that the general rule regarding promissory statements by a condemnor set forth in Annotation 7 A.L.R.2d 364, 366 (1949) is applicable:

"Once it is ascertained in a particular situation that what is really involved is

merely promissory, the courts are well agreed that an unaccepted promise, promissory statement or stipulation, or declaration of future intentions by a condemner as to what will be done or not done with respect to the property condemned, to that left untaken and to the rights of the landowner in relation thereto, cannot affect either the character or extent of the condemner's rights acquired or the amount of the damages it must pay as just compensation. * * * "

The appellants vigorously urge the applicability of *Little v. Loup River Public Power Dist.*, 150 Neb. 864, 36 N.W.2d 261, 7 A.L.R.2d 355 (1949), contending that this was the substantial equivalent of an unaccepted promissory stipulation.

■ There is a distinction made between mere promissory statements and binding stipulations, reservations or limited condemnations. An appropriate summary of this distinction is set forth in Annotation 7 A.L.R.2d 364, 393 (1949) as follows:

" * * * If a particular case involves one of these three matters rather than a promissory matter, the binding stipulation, or the reservation of rights, easements, etc., to the property owner, or the limited condemnation, is properly to be considered in determining the landowner's damages or compensation. Although the distinctions are recognized in decision after decision; although occasionally certain tests or criteria are laid down whereby it may be ascertained whether what is involved is merely promissory or is legally effective; and although the courts within a jurisdiction frequently distinguish, explain, or reconcile earlier decisions—it still remains a difficult and close question whether a particular situation involves an ineffective promissory statement, etc., or effective matter of one of the three classes outlined above. * * * "

The cases there cited support this proposition.

The imposition of these conditions by the Siting Council pursuant to statute at a very minimum constitutes them as binding terms of the permit. Compliance with an order lawfully entered pursuant to statute must be given at least the same legal effect as an accepted promise. In either event a party in the position of the appellee would be bound by law to comply with such a condition.

■ The appellants' argument that the landowners can be distinguished from the Goshen-Platte Protective Association and therefore a stipulation entered into by that corporation which led to the Siting Council order could not be binding upon them is fallacious. It ignores the proposition that these very landowners who were members of the Goshen-Platte Protective Association were third-party beneficiaries of this agreement. *Wyoming Machinery Company v. United States Fidelity and Guaranty Company*, Wyo., 614 P.2d 716 (1980); *Peters Grazing Association v. Legerski*, Wyo., 544 P.2d 449 (1975), reh. denied 546 P.2d 189 (1976). The order of the Siting Council specifically provides that the conditions were set forth "for the benefit of the landowners." The possible result of unjust enrichment or windfall profits to the landowners at the expense of a condemnor who would have to pay damages and also have to protect against the damages occurring has previously been found unacceptable by the courts. *State ex rel. State Highway Commission v. Grenko*, 80 N.M. 691, 460 P.2d 56 (1969).

## THE INSTRUCTIONS AS TO DAMAGES

The damage instructions (Instruction No. 7 and Instruction No. 8) which the trial court gave in this case are quoted above. At the trial the appellants offered Instruction A, which reads as follows:

"Where an easement is taken by condemnation, the landowner is not limited to compensation for rights actually taken. The owner is also entitled to recover compensation for any damages to his remaining lands. The owner is entitled to just compensation for the taking of the easement and all of its consequences.

"The jury is to determine two things: first, the compensation due each defendant for the easement condemned by the

plaintiff, and secondly, the damages, if any, caused to the remaining lands of each defendant as a consequence of the taking by condemnation."

The appellants excepted to the refusal of the trial court to give Instruction A. They also excepted to Instruction No. 7 at the time the trial court considered the instructions on the ground that it did not properly state the correct rule of damages in condemnation cases.

Appellants repeat essentially the same argument here. Their claim is that in easement condemnation cases in Wyoming there is a two-element rule of damages which compensates the landowner for the fair market value of the easement taken plus the consequential damages which may be caused to the remaining property. They cite in support of their position *Routh v. State Highway Commission,* Wyo., 402 P.2d 706 (1965); *Stringer v. Board of County Commissioners of Big Horn County,* Wyo., 347 P.2d 197 (1959); and *Barber v. State Highway Commission,* 80 Wyo. 340, 342 P.2d 723 (1959). They distinguish *Gillespie v. Board of Com'rs of Albany County,* 47 Wyo. 1, 30 P.2d 797 (1934), pointing out that the only claim in that case was for consequential damages since the landowners already had been paid for the land taken for the right-of-way.

The appellee argues that the general rule is aptly stated in 4 Nichols on Eminent Domain, § 12.41(2) (Rev.Ed.1979) to the effect that the majority of cases recognize the difference between the market value of the land free of the easement and the market value as burdened with the easement which has been imposed as the measure of damages. They point to language in *Colorado Interstate Gas Company v. Uinta Development Company,* Wyo., 364 P.2d 655 (1961), and *Gillespie v. Board of Com'rs of Albany County,* supra, as adopting this rule with respect to easement condemnations.

■ It is evident to this court that the State of Wyoming, with respect to easement condemnations, is both legislatively and judicially committed to the proposition that a landowner is entitled to be compensated for the value of the land taken for the easement and the consequential damages to his remaining land. See *Colorado Interstate Gas Company v. Uinta Development Company,* supra; *Routh v. State Highway Commission,* supra; *Stringer v. Board of County Commissioners of Big Horn County,* supra; *Barber v. State Highway Commission,* supra; and *Gillespie v. Board of Com'rs of Albany County,* supra.

■ The essential debate between these parties, then, is whether that proposition adequately is encompassed within Instructions 7 and 8, which were given. We conclude that no error occurred in the failure to give the appellants' proffered Instruction A because it conflicts in part with the rule suggested in 5 Nichols on Eminent Domain, § 16.103(1) (3d Ed.1979), which does not afford to the owner the full fair market value of the entire strip described in the easement taken. We conclude that there is for purposes of electric power transmission line easements a good deal of merit in the proposition set forth in § 16.103(1), which in essence suggests that the owner is entitled to payment for the fair market value of the land actually occupied by the poles or towers plus diminution in value of the balance of the right-of-way taking, together with the depreciation in value of the remainder of the tract. The appellee would not appear to be opposed to this rule since the essence of its expert witness's testimony was to define values for these elements. In support of his before-and-after valuation the expert testified, in substance, that in his opinion the landowner lost the area actually used for the towers for the transmission line and a 25-foot strip of land over which a road would develop in the construction and maintenance of the power line. He also testified to a rental value for a temporary taking of the entire 200-foot strip during the construction of the power lines. He further testified that in his opinion there was no other diminution in the value of the balance of the right-of-way taken and that there was no depreciation in value of the remainder of the tract. As noted above, the evidence of the appellants essentially

was that they were entitled to the full value of the 200-foot strip of the right-of-way and a 10 percent diminution in value of the remainder of the tract.

We then turn to the contention that the instructions which were given were erroneous. Appellants argue that the prejudice from erroneous instructions is to be presumed, citing authorities from other jurisdictions. The position of the appellee is that prejudice is not presumed but the appellant must establish that the error was prejudicial, citing *Booth v. Hackney*, Wyo., 516 P.2d 180 (1973); *Waters v. Trenckmann*, Wyo., 503 P.2d 1187 (1972); *State Highway Commission of Wyoming v. Joe Miller Land Company*, Wyo., 467 P.2d 450 (1970); *Lammey v. Producers Livestock Credit Corporation*, Wyo., 463 P.2d 491 (1970); *Robertson v. State Highway Commission*, Wyo., 450 P.2d 1003 (1969); and Rule 61, W.R.C.P.

Our analysis in this instance leads us to conclude that prejudice in the instructions must be found in any inhibition upon appellant in arguing its theory of the case. We conclude that because of the language of Instruction No. 8 no inhibition was imposed upon appellants in arguing their theory of the case. It is clear from the closing argument that the appellants contended that they were entitled to recover for the entire area of the 200-foot easement strip at current market value, and that they claimed a 10 percent diminution in the value of their remaining lands. The instructions which were given fully justified that argument.

An analysis of a verdict rendered by a jury always is suspect because of conjecture. We suggest, however, that because of the nature of the jury verdict in this case the members of the jury concluded that the land actually taken was limited in some fashion similar to the damage theory of appellee's expert, but that there was some greater consequential damage than the zero factor which he testified to. The jury obviously did not accept the 10-per-cent-across-the-board figure given by appellants' experts and by the landowners themselves, nor did the jury appear to agreed with the full 200-foot-strip theory asserted by the appellants. The jury certainly is entitled to determine as a question of fact the actual extent of the taking, and in this instance the awards were within the range of values testified to by the experts at the trial.

Having concluded that there was no error in the instructions given by the district court in this case, we are constrained to state further that with respect to electric power transmission line easement condemnations in Wyoming the district court should instruct the jury that the measure of damages is the difference in value of the whole tract prior to imposition of the easement and the value of the tract after the imposition of the easement. The jury then may be advised that in arriving at the determination of damages three factors may be considered: (1) compensation to the owner for that part of the easement strip over which the condemnor acquires an exclusive use, being the part covered by the poles and towers and their foundations; (2) damages, if any, to the remainder of the easement strip caused by the partial taking, including temporary damages, if any; and (3) damages, if any, to the remainder of the land which is not taken. The authorities support the proposition that Instruction No. 8 given by the court in this case adequately defines the third factor and appropriately circumscribes it, although in specific instances it well may be appropriate to allude to particular factors that are applicable under the facts.

Finding no error in the proceedings as asserted in this appeal, we conclude that the judgment of the trial court should be affirmed.